Andrew M. FINE, Jr., Plaintiff,

v.

PHILIP MORRIS, INC., R. J. Reynolds, Inc., American Tobacco Inc., Liggett & Myers Tobacco Co., Inc., P. Lorillard Co., Inc.; Leo Burnett Co., Inc., Hill & Knowlton, Inc., Tobacco Institute, Inc., and W. T. Hoyt, Executive Director of the Council for Tobacco Research— U.S.A., an unincorporated association, formerly known as Tobacco Industry Research Committee, Defendants.

United States District Court
S. D. New York.

Oct. 26, 1964.

On Reargument Dec. 22, 1964.

362

Speiser, Shumate, Geoghan & Law, New York City, for plaintiff.

Conboy, Hewitt, O'Brien & Boardman, New York City, for Philip Morris, Inc.

Chadbourne, Parke, Whiteside & Wolff, New York City, for American Tobacco, Inc.

Webster, Sheffield, Fleischmann, Hitchcock & Chrystie, New York City, for Liggett & Myers Tobacco Co., Inc.

Perkins, Daniels & McCormack, New York City, for P. Lorillard Co., Inc.

Eugene J. T. Flanagan, New York City, for Leo Burnett Co., Inc.

Simpson, Thacher & Bartlett, New York City, for Hill & Knowlton, Inc.

Weil, Gotshal & Manges, New York City, for Tobacco Institute, Inc.

Clark, Carr & Ellis, New York City, for The Council for Tobacco Research—U.S.A.

McLEAN, District Judge.

This action was begun in the Supreme Court, New York County. Defendants removed it to this court, claiming that the action is removable under 28 U.S.C. § 1441(b), or, in the alternative, under 28 U.S.C. § 1441(c). Plaintiff moves to remand.

The complaint is 70 pages in length. It contains 29 separately stated "causes of action." Each cause of action begins by realleging all the paragraphs of the complaint which have preceded it, so that the 29th incorporates the entire complaint.

Plaintiff's grievance is that he allegedly contracted lung cancer as a result of smoking Philip Morris cigarettes. He has sued five cigarette manufacturers, an advertising agency, a public relations firm, and two tobacco research organizations. The first ten causes of action are directed only against defendant Philip Morris, Inc. Other causes of action are directed against other defendants, and the last is directed against all. The various causes of action assert different grounds of liability, i. e., negligence, breach of warranty, misrepresentation, etc.

The ground alleged in the sixth cause of action (Paragraphs 111–117) is that cigarettes contain hazardous toxic substances within the meaning of the federal Hazardous Substances Labeling Act (15 U.S.C. § 1261 et seq.); that they are products intended and suitable for home and household use, within the meaning of that Act; that defendant Philip Morris, Inc. violated the Act by failing to attach warning labels to the packages and that in consequence, defendant Philip Morris, Inc. "by virtue of its violation of the provisions of said Act enacted and designed to protect consumers of products, is civilly liable to plaintiff" in the sum of $1,000,000.

These allegations purport to state a claim arising under a federal statute. The right allegedly created by federal statute is an essential element of plaintiff's claim. The right will be supported if the statute is given one construction or effect, and defeated if it receives another. Consequently, the claim "arises under the * * * laws * * * of the United States" within the meaning of 28 U.S.C. § 1331. Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936).

This being so, and inasmuch as the claim is not obviously frivolous, this court has jurisdiction over it and power to determine the issue thus tendered. Whether the claim is sufficient in law is immaterial. On this motion to remand, the question is solely whether this court has jurisdiction, not whether the sixth cause of action states a claim upon which relief can be granted. Since this cause of action asserts a federal claim which is not plainly unsubstantial, this court has jurisdiction, regardless of whether it ultimately turns out that the claim is good or bad. Bell v. Hood, 327 U.S. 678, 66 S. Ct. 773, 90 L.Ed. 939 (1946); Romero v. International Terminal Operating Co., 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959). There is thus no need to determine on this motion whether the Act, properly construed, does or does not give rise to a private right of action for its violation.

What is to be done with the other 28 causes of action which allege grounds of liability which concededly raise no federal question? Defendants maintain that this court has jurisdiction over them by virtue of the doctrine of pendent jurisdiction laid down in Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933). The analogy between this case and Hurn v. Oursler does not appear to be sound. Hurn v. Oursler involved two causes of action, one for copyright infringement and the other for unfair competition. The court held that since the court had jurisdiction of the federal claim of copyright infringement, and since the same acts which were the basis of that claim were also the basis of the claim of unfair competition, the court had jurisdiction of the latter claim as well. The court pointed out that the finding of no copyright infringement "contains every essential element necessary to justify the conclusion that there was likewise no unfair competition * * * ." (289 U.S. at 247, 53 S.Ct. at 590)

That is not the situation here. Granted that plaintiff has allegedly suffered only one injury, the various grounds for recovery which he asserts do not depend upon the same facts. Some of his grounds may be valid and others may not. If it is ultimately held that cigarettes are not toxic substances within the meaning of the federal act, it may nevertheless still be held that defendants are liable for negligence or breach of warranty. The doctrine of pendent jurisdiction would be strained beyond the breaking point if 28 different non-federal claims are regarded as appending to one federal claim under these circumstances.

Nor do I think that much weight should be placed upon the rather unhappy device employed by the draftsman of the complaint of incorporating by reference in each cause of action all the preceding allegations of the complaint. Inartistic as this practice is, it does not necessarily merge into a single claim what would otherwise be separate claims. The incorporation may be disregarded as surplusage. A claim for injury due to negligence is different from a claim for damages for breach of warranty because it depends on different facts. A claim for injury caused by violation of the Hazardous Substances Labeling Act is different from a claim for common law deceit. No matter how the pleader may have confused them by unnecessary repetition of previous paragraphs of the complaint, we still have, in my opinion, the situation which is contemplated by 28 U.S.C. § 1441(c). That section provides:

"Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable

claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction."

The various causes of action alleged are separate and independent. American Fire & Casualty Co. v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951) is distinguishable because there each of the claims involved "substantially the same facts and transactions" (341 U.S. at 16, 71 S.Ct. at 541), which is not true here.

This action, therefore, is not removable under 28 U.S.C. § 1441(b) but is removable under Section 1441(c). Under Section 1441(c) this court has discretion as to how to handle the non-federal claims.

It seems to me a wise exercise of that discretion to remand all causes of action except the sixth to the state court. I see no reason why this court should be burdened with disposing of 28 non-federal claims merely because plaintiff has asserted one federal claim which is a comparatively minor aspect of the entire litigation. The motion to remand is therefore granted as to all causes of action except the sixth. As to that cause of action, it is denied.

Settle order on notice.

## On Reargument.

McLEAN, District Judge.

The court has granted reargument of plaintiff's motion to remand this action to the Supreme Court, New York County, from which it was removed by defendants. Reargument was granted because of defendants' contention that a point was overlooked both by the court and by counsel upon the first argument which requires a result different from that heretofore reached by the court. The nature of the action is described in the court's opinion dated October 26, 1964. There is no need to repeat all that was said there. Suffice to say that plaintiff seeks damages for lung cancer allegedly contracted as a result of smoking Philip Morris cigarettes. His complaint contains 29 counts or "causes of action," only one of which alleges a claim arising under the laws of the United States.

Defendants asserted in their petition for removal that this court had jurisdiction under 28 U.S.C. § 1331(a) because the complaint alleged a federal claim, and that the action was removable under 28 U.S.C. § 1441(b), or, in the alternative, under Section 1441(c). The petition did not state that there was complete diversity of citizenship between the parties. The court held that the action was not removable under Section 1441(b), but was removable under Section 1441(c) which provides:

"Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction."

The court then held that since only one of the 29 causes of action alleged a federal claim, the court, in the exercise of the discretion given it by Section 1441(c), would remand the 28 non-federal claims to the state court. Counsel and court alike treated the case as though the only basis of jurisdiction was "federal question" jurisdiction, i. e., jurisdiction conferred by 28 U.S.C. § 1331(a).

Defendants now contend for the first time that it appears from the face of the complaint that there is complete diversity of citizenship between the parties. Therefore, they say, the entire case is one within the "original jurisdiction" of this court under 28 U.S.C. § 1332 and hence this court had no power under 28 U.S.C. § 1441(c) to remand any part of it.

The fundamental premise of this argument is the assertion that the complaint shows complete diversity of citizenship on its face. This does not appear to be the fact. True, the complaint

alleges that plaintiff is a resident and citizen of Pennsylvania and that eight of the nine defendants are corporations incorporated in states other than Pennsylvania. In several instances, however, the complaint fails to allege where these corporations have their principal place of business. The principal place of business of a corporation is now a test of corporate citizenship under 28 U.S.C. § 1332(c). The complaint thus fails to negative the possibility that one or more of these corporations may have its principal place of business in Pennsylvania, in which case it would be a citizen of Pennsylvania, as is plaintiff.

More important than this is the situation with respect to the ninth defendant, described in the caption of the action as "W. T. HOYT, Executive Director of the COUNCIL FOR TOBACCO RESEARCH —U.S.A., an unincorporated association, formerly known as Tobacco Industry Research Committee."

The complaint does not allege the state of Mr. Hoyt's citizenship. Doubtless it could be said that this is unnecessary, since he is sued only in a representative capacity. But the complaint also fails to allege the citizenship of the members of the unincorporated association. The complaint alleges that the association has its principal office in New York, but this is immaterial for our purposes because 28 U.S.C. § 1332(c), which provides that a corporation shall be deemed a citizen of the state where it has its principal place of business, does not include unincorporated associations.

The complaint further alleges (Paragraph 181) that the Council for Tobacco Research—U.S.A. is a voluntary, unincorporated association, that it was "created by the defendant Hill & Knowlton, and by firms, organizations and corporations engaged in the tobacco industry in the United States, * * *" It further alleges (Paragraph 184) that "among the real parties in interest and members in defendant association COUNCIL, are defendant HILL & KNOWLTON and the defendant tobacco manufacturers PHILIP MORRIS, REYNOLDS, AMERICAN TOBACCO and LORILLARD." Finally it alleges (Paragraph 185):

"That defendant COUNCIL, during the time period when plaintiff smoked defendant PHILIP MORRIS' cigarettes, as hereinabove alleged, did not comply, and has never complied, with the laws of the State of New York that require that an association file a certificate of doing business under an assumed name; that as a result of said omission, all the real parties in interest in COUNCIL, including those referred to in the immediately preceding paragraph, have assumed each and every civil liability and responsibility of defendant COUNCIL."

Until the recent decision of the Court of Appeals in Mason v. American Express Company, 334 F.2d 392 (2d Cir.1964), the law was clear that an unincorporated association is not an entity for diversity purposes and that no diversity exists unless each member of the association is a citizen of a state other than the plaintiff's.* Upper Lakes Shipping Ltd. v. International Longshoremen's Association, 33 F.R.D. 348 (S.D.N.Y.1963). See cases cited by the court in Mason v. American Express Company, 334 F.2d 392, at 403.

In Mason, the Court of Appeals established a new rule for joint stock associations created by New York law. It held that such an association is an entity and a citizen of New York for diversity purposes. But it was careful to point out (334 F.2d at 403):

"We do not mean to intimate, by our allusion to the criticism which has been directed toward the current doctrine dealing with unincorporated associations generally, any view as to whether separate entity treatment ought also to be accorded types of unincorporated associations other than the type now before us, for many would appear to possess

---

* An exception to this rule for a class action is inapplicable here.

fewer attributes of a separate juridical personality than does a New York joint stock association. The determination of such an issue would necessarily have to involve consideration of whether to depart from a line of decisions in this Circuit, proceeding from cases decided before the advent of [People of] Puerto Rico v. Russell & Co., supra [288 U.S. 476, 53 S.Ct. 447, 77 L.Ed. 903] wherein we have heretofore refused to extend separate entity treatment to unincorporated associations of this sort."

The Council for Tobacco Research—U.S.A. is not alleged to be a joint stock association. There is nothing in the complaint to show that it has the attributes of a joint stock association. Indeed, the inference is to the contrary. In Mason, the court pointed out that American Express Company, the joint stock association there involved, had filed articles of association in a public office in New York. Here, on the other hand, the complaint expressly alleges that the Council has not filed any certificate. The American Express Company had capital stock divided into shares and owned by more than 20,000 stockholders. The Council, on the other hand, is alleged to be made up of "members" who are the "real parties in interest."

■ In the court's opinion, the new rule laid down by Mason as to joint stock associations does not apply to the Council for Tobacco Research—U.S.A. The old rule still obtains as far as this unincorporated association is concerned. It follows that the complaint in this action fails to show complete diversity of citizenship on its face, because it does not allege the citizenship of the members of the Council.

This is the short answer to defendants' present contention. But since the point they have raised is novel and of general interest, the court thinks it advisable to express its views on the merits of their argument. Of course, what follows in this opinion is based upon the assumption, which, as previously pointed out, is incorrect, that the complaint does show complete diversity on its face.

■ Even if complete diversity were alleged, this action would not be removable to this court on that ground. This is because some of the defendants are citizens of New York. 28 U.S.C. § 1441 (b) provides in effect that an action of which the district court has original jurisdiction by virtue of diversity of citizenship "shall be · removable only if none of the parties in interest· properly joined and served as defendants is a citizen of the State in which said action is brought."

We thus have this situation. Plaintiff could have brought this entire action in this court in the first place. He was not required to, however, and he chose to bring it in the state court, as he had the right to do. Defendants could not have removed the case to this court on the ground of the diverse citizenship of the parties. Defendants sought to remove it because of the existence of a federal question. As far as the federal question is concerned, this court had discretion to remand 28 of the 29 causes of action to the state court and it exercised its discretion in favor of such remand. Nevertheless, because of the fact that complete diversity exists, defendants argue that the court has no discretion to remand any part of the case. In other words, the circumstance that diversity exists, a circumstance which would not have enabled defendants to remove the case here, nevertheless compels the court to retain the case once they have brought it here on other grounds, even though the grounds on which they brought it here were not sufficient to require the court to retain it.

Such a construction of the statute does not commend itself to the court's common sense. But the words of Section 1441(c) —"all matters not otherwise within its original jurisdiction"—taken literally, support it. "Original jurisdiction" is the phrase used in 28 U.S.C. §§ 1331 and 1332 which refers to the types of actions which may be brought in the federal court in the first instance. Thus, when

Section 1441(c) states in effect that the court may not remand matters "within its original jurisdiction," it is literally stating that the court may not remand an action which could have been instituted in this court in the first instance under 28 U.S.C. § 1332.

This result does not seem compatible with the removal statute, 28 U.S.C. § 1441, viewed as a whole. Subdivision (a) of Section 1441 states that "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction" may be removed. If this were all there were to it, the phrase in Section 1441(c) would be consistent. The statutory scheme would be that all "original jurisdiction" cases could be removed and conversely, an "original jurisdiction" case could not be remanded.

But there is more to Section 1441 than this. Subdivision (b) sets up an exception to the general rule that all "original jurisdiction" cases may be removed. As we have noted, subdivision (b) provides that there is one type of "original jurisdiction" that cannot be removed, namely, the very type that we have here, where, although there is complete diversity, some of the defendants are citizens of the state in which the action was originally brought.

This brings us to subdivision (c). It states in effect that where there are two separate and independent claims, one of which would be removable if sued upon alone, and the other of which would not, both may be removed, but the court, in the exercise of its discretion, may remand one of them. Logically, it would seem that the one that the court is empowered to remand is the one that was not removable. Whether that claim was or was not within the original jurisdiction of this court had nothing to do with its removability in the first place. It was removable solely because of the fact that it happened to be joined in the same action with a removable claim. If the court believes that this claim unnecessarily complicates the action, the court should

be empowered to dispose of it by remanding it, and since the fact that it was within the court's original jurisdiction was not the reason for removing it, that fact should not require the court to retain it. In short, it would seem that the only construction of subdivision (c) which produces a coherent statutory scheme is to read it as though it said "all matters not removable" may be remanded. Otherwise we reach what seems to be an absurd result.

The legislative history of subdivision (c) reveals that as first drafted, it provided that the court might remand all matters not otherwise within "its jurisdiction." The word "original" was not included. The reviser's notes explained that this meant that all matters which were not removable could be remanded. See Revision of Federal Judicial Code, U.S. Gov't Printing Office (1945)

██ This is consistent with the interpretation which has been given to 28 U.S.C. § 1447(c) which provides that, "If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case * *." The word "jurisdiction" in this section has been held to mean "removal jurisdiction," rather than original jurisdiction. In other words, the section means that if the action is not removable, it shall be remanded. Heintz & Co. v. Provident Tradesmens Bank and Trust Co., 228 F.Supp. 165 (E.D.Pa.1964)

As originally drafted, therefore, the new subdivision (c) of Section 1441 was in harmony with other parts of the removal statute. When the text of subdivision (c) was submitted to Congress in H.R. 7124, 79th Cong., 2d Sess. (1946), however, the word "original" had been inserted before "jurisdiction," and this change was retained in the bill as eventually enacted. H.R. 3214, 80th Cong., 2d Sess. (1948)

The legislative history sheds no light on why this was done. It is interesting to observe, however, that the same reviser's report was submitted to the House

with H.R. 7124. H.R. Doc. No. 2646, 79th Cong., 2d Sess. (1946).

That would seem to indicate that the Committee, and Congress as a whole, was not aware of the fact that a change of substance had been effected in the bill by adding the word "original."

Doubtless in most cases the problem we have here would not arise. In most instances a claim that was not removable in the first instance (but for the provisions of Section 1441(c) which make a non-removable claim removable when joined with a removable claim) would also be a claim not within the court's original jurisdiction. Thus, in this particular case, court and counsel on the first argument considered only the existence or nonexistence of federal jurisdiction based on a "federal question." On that basis it was clear that 28 of the 29 causes of action presented no federal question and hence were neither removable nor within the court's original jurisdiction. The coincidence that we have here must be rare, i. e., claims which are not in themselves removable, and which may properly be remanded, if we consider only the basis upon which they were removed in the first place, but which are discovered to be nevertheless within the court's original jurisdiction for a wholly different reason, a reason which was not even mentioned in the petition for removal because it was irrelevant to that petition.

There is nothing to indicate that this extraordinary situation was within the contemplation of Congress, or that Congress actually intended by inserting the word "original" in Section 1441(c) to encompass it. It seems likely that Congress did not realize that it was changing the sense of the first draft of the section by putting in the word "original." It seems probable that Congress thought that it was enacting a statute which meant what the first draft had meant, namely, that those causes of action which were not removable could be remanded. Nevertheless, the insertion of the word "original" did change the sense. The phrase "original jurisdiction" is a phrase

of art. It could not conceivably mean anything other than jurisdiction to determine actions which could originally have been brought in this court under the basic jurisdictional statutes, 28 U.S.C. § 1331 et seq. There is no room to construe this phrase to mean anything other than what it says. The court is thus driven to the conclusion that by an inept use of technical language, Congress enacted a statute which, when applied to the peculiar circumstances of this case compels the court to reach an unsound result. Consequently, were it not for the fact that defendants are in error in their basic assumption that the complaint shows complete diversity of citizenship, the court would have no alternative but to retain the entire action.

In conclusion, a word must be said about an alternative contention advanced by defendants. They maintain that, wholly apart from the question previously discussed, there is at least complete diversity shown by the complaint with respect to the 11th, 12th, 13th and 14th causes of action alleged against defendant Leo Burnett Co., Inc., that these are separate and independent claims which were removable under Section 1441(c) and as to these, at any rate, the court must retain them, whatever it does about the others. Therefore, they say, since the court is required to retain this much of the case, it should, in its discretion, retain all of it.

These causes of action charge that defendant Burnett, an advertising agency, made misrepresentations and concealed material facts in the cigarette advertisements that it prepared for defendant Philip Morris. These charges are similar to those made in other causes of action alleged against Philip Morris alone, based upon this same advertising material. There is no apparent reason for alleging these claims in one series of causes of action against Philip Morris, and in another series against Burnett. Both defendants could have been sued jointly. Each of the claims involves substantially the same facts and transactions. Consequently, they are not "separate and

independent," within the meaning of Section 1441(c). American Fire & Casualty Co. v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951).

The situation here is different from that considered by the court in its original opinion in which it held that the claim for violation of the federal Hazardous Substances Labeling Act was separate and independent of the claims for negligence, breach of warranty and deceit because it was based on different facts. It does not follow from this that the claims against Philip Morris and Burnett for false and misleading advertising are separate and independent. The court holds, therefore, that it has discretion to remand the claims against Burnett as well as all other claims except the claim under the federal statute.

After careful consideration of each of defendants' contentions on their motion for reargument, the court adheres to its decision of October 26, 1964.

Settle order on notice.