**RIEGEL TEXTILE CORPORATION,**
Plaintiff,

v.

**CELANESE CORPORATION, Defendant.**

No. 79 Civ. 3493 (WCC).

United States District Court,
S. D. New York.

July 9, 1980.

Windels, Marx, Davies & Ives, New York City, for plaintiff; Anthony A. Dean, New York City, of counsel.

Rosenman, Colin, Freund, Lewis & Cohen, New York City, for defendant; Joseph Zuckerman, Frank H. Wohl, Michael H. Seigler, New York City, of counsel.

## OPINION AND ORDER

CONNER, District Judge:

Defendant Celanese Corporation ("Celanese") has moved to dismiss the complaint in this action for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted pursuant to Rules 12(b)(1) and 12(b)(6), F.R.Civ.P. For the reasons discussed below, this motion is granted.

*Background*

This is an action for lost profits, loss of good will, other damages incurred due to idling of manufacturing facilities, further related actual damages, and punitive damages in connection with plaintiff Riegel Textile Corporation's purchase, processing and sale of fabric woven from a certain fiber manufactured by Celanese. Plaintiff (hereafter "Riegel") alleges that the fiber in question, a blend of Arnel triacetate and Fortrel polyester treated with the flame retardant Tris (2, 3 dibromopropyl) phosphate ("Tris"), contains a known carcinogen and "other chemical compounds also contained in known carcinogens," Complaint, ¶ 10. Riegel states that in 1972, when Celanese first marketed the fiber, Celanese knew or should have been aware that Tris contained this carcinogen, as well as the other potentially carcinogenic compounds, but had failed to conduct tests to determine the carcinogenicity of Tris-treated fiber. Complaint, ¶ 11.

According to plaintiff, Celanese solicited Riegel's purchase of Tris-treated fiber by representing to Riegel that fabric made from the fiber would be suitable for the making of children's sleepwear, which is required by federal law to meet certain flame-retardant standards. After testing fabric made from the fiber for flammability and color-fastness, Riegel requested Swift Spinning Mills, Riegel's usual yarn supplier, to purchase Tris-treated fiber from Celanese; requested Piedmont Knitting Company, Riegel's usual fabric supplier, to purchase 1,000,000 pounds of yarn made from Tris-treated fiber from Swift; and ordered 1,000,000 pounds of fabric woven from this yarn from Piedmont. Riegel then manufactured and delivered children's sleepwear garments made from this fabric to a number of purchasers. Complaint, ¶¶ 13–19.

On April 8, 1977, the Consumer Product Safety Commission ("Commission") declared that any children's clothing containing Tris was a banned hazardous substance within the meaning of the Federal Hazardous Substances Act, 15 U.S.C. § 1261 *et seq.*

("Federal Hazardous Substances Act," "Hazardous Substances Act" or "the Act") since the clothing was intended for use by children and could cause substantial illness because of its toxicity. 42 Fed.Reg. 18850. This order specified that the sleepwear should be repurchased by clothing manufacturers under 15 U.S.C. § 1274. The Commission expanded the ban and extended the repurchase requirement to cover Tris-treated fabric and yarn on May 5, 1977, see 42 Fed.Reg. 28060 (republishing the May 5 determination).

On June 23, 1977, in *Springs Mills, Inc. v. Consumer Product Safety Commission*, 434 F.Supp. 416 (D.C.S.C.1977), Judge Chapman of the United States District Court for South Carolina ruled that the Commission's ban on Tris-treated sleepwear and fabric was null and void, since the Commission had failed to follow the rulemaking procedures required under the Act in promulgating the ban, *id.* at 435. Judge Chapman further ruled that the repurchase obligations of Section 1274 would not be triggered until the Commission had conducted a full due process hearing on the issue of whether Tris was a "hazardous substance" within the meaning of the Act, and enjoined the Commission from reinstituting its ban until the Commission held appropriate hearings.

The Commission has not issued any further regulations banning garments containing Tris-treated fiber. The Commission has, however, continued to interpret the Act as requiring classification of Tris-treated fiber and garments made from such fiber as banned hazardous substances, and has issued a Statement of Policy indicating that the Commission intends to enforce this interpretation by bringing individual actions in federal district court to "prevent the sale and to require the statutory repurchase of such products." 42 Fed.Reg. 61621, *reprinted at* 3 Consumer Product Safety Guide (CCH) ¶ 26,650. See generally 1 Consumer Product Safety Guide (CCH) ¶ 2312.

Riegel alleges that under these various orders, it has repurchased children's sleepwear garments valued at $689,141 from its customers; and that the Commission's actions have "effectively prevented the further sale by Riegel of its children's sleepwear containing Tris-treated Arnel Fortrel fiber." Complaint, ¶ 28.

*Contentions*

Plaintiff's first claim is based on an asserted implied cause of action for damages arising under 15 U.S.C. § 1263. Plaintiff further claims damages under state law theories of strict liability, fraud, implied warranties of merchantability and fitness for a particular purpose, express warranty, negligence *per se*, and negligence, and contends that the Court has jurisdiction over the latter claims under the doctrine of pendent jurisdiction (there being no diversity jurisdiction, since both plaintiff and defendant are Delaware corporations).

Defendant contends that, with respect to plaintiff's first claim, 15 U.S.C. § 1263 should not be construed to create an implied private cause of action for damages. In support of this position, defendant points out that the Federal Hazardous Substances Act, of which Section 1263 is a part, specifically creates criminal, seizure and injunctive penalties, all to be brought in the name of the United States, and specifically provides for repurchase by manufacturers under Section 1274, all without mentioning a further private remedy for damages caused by violation of the Act's provisions. Defendant asserts that plaintiff has no remedy on these facts under the express provisions of Section 1274 of the Act, or under the related provisions of 15 U.S.C. § 2072, the statute creating a private cause of action for damages for violation of regulations issued by the Consumer Product Safety Commission under the Consumer Product Safety Act. Defendant further notes that limitation of remedies under the Federal Hazardous Substances Act to the relief specifically provided for in the statute is consistent with the Act's underlying purpose of achieving nationwide regulatory uniformity with respect to *precautions* to be taken as to certain dangerous items, rather than as to remedies for injuries caused by such items; that analogous regulatory provisions

such as those of the Food, Drug and Cosmetic Act, 21 U.S.C. § 301 et seq., and the Flammable Fabrics Act, 15 U.S.C. § 1191 et seq., have not been construed to create a private cause of action for damages; and that Riegel's theory, if adopted, would "effect a wholesale transfer of product liability litigation to the Federal courts," Defendant's Reply Brief at 6, without clear Congressional authority.

Defendant then argues that, since dismissal of the first cause of action is proper, the Court should not retain jurisdiction over plaintiff's state law claims as (1) pendent jurisdiction should only be exercised when a plaintiff states a federal claim sufficiently substantial to withstand a motion to dismiss for failure to state a claim, and (2) state law issues will predominate in resolving the remaining claims, making retention of those claims unadvisable as a matter of discretion.

Plaintiff replies that Celanese has, by definition, violated the Act;[1] that the case law under the Act indicates that a private cause of action exists under Section 1263 for violation of the Act; that this interpretation is supported by the broad purposes of the Act to prevent the introduction of dangerous articles intended for use by children into interstate commerce, as well as by the 1969 addition of Section 1274, creating a private right of rescission in favor of a buyer of a substance banned under the Act against his immediate seller, which section, the legislative history shows, was intended to place liability for economic loss due to recall of an unsafe product on the manufacturer; and that the 1972 Consumer Product Safety Act, giving the Commission jurisdiction over administration of the Federal Hazardous Substances Act, and creating a private cause of action for any person injured by any knowing violation of any consumer product safety rule, reinforces the conclusion that a private cause of action exists under the Act. Plaintiff further asserts that it and those of its employees working with hazardous substances fall within the class of members of the public intended to be protected from damaging substances and to be enabled to shift economic losses associated with such substances to the manufacturing party; and that plaintiff's recovery is a matter of federal concern rather than one of concern to the states.

With respect to its state law claims, plaintiff argues that these claims share with the federal claim a common nucleus of operative facts, the carcinogenicity of Tris and Celanese's knowledge as to the intended use of the fiber, involve virtually identical parties and proof, raise similar legal issues with respect to compliance with the Federal Hazardous Substances Act, and should be retained here as a discretionary matter to avoid simultaneous proceedings and possible inconsistent results in federal and state courts.

*Discussion*

A. Plaintiff's claim under the Federal Hazardous Substances Act

1. Statutory Provisions

Section 1263 of the Federal Hazardous Substances Act, under which plaintiff asks the Court to imply a private cause of action, provides, in relevant part, that:

"[t]he following acts and the causing thereof are prohibited:

---

1. Paragraph 31 of plaintiff's complaint alleges that:

"The Tris-treated Arnel Fortrel fiber sold by Celanese to Swift for weaving into yarn to be sold to Piedmont for use in fabric woven by Piedmont for Riegel were banned hazardous substances because they failed to carry the warnings required by the Act, 15 U.S.C. § 1261(p). Celanese's sale of the Tris-treated Arnel Fortrel fiber was a prohibited act under 15 U.S.C. § 1263."

This appears to be a mislabelling argument. In its brief, plaintiff modifies this argument to assert that Celanese violated Section 1263 by introducing a hazardous substance (within the meaning of Sections 1261(f) and (g)), intended for use by children, and thus banned by definition under Section 1261(q)(1), into interstate commerce, see Section 1263(a)—a banned hazardous substance argument, rather than a mislabelled hazardous substance argument.

"(a) The introduction or delivery for introduction into interstate commerce of any misbranded hazardous substance or banned hazardous substance."

Section 1261(q)(1) defines the term "banned hazardous substance" as:

"(A) any toy, or other article intended for use by children, which is a hazardous substance, or which bears or contains a hazardous substance in such manner as to be susceptible of access by a child to whom such toy or other article is entrusted;"

or as:

"(B) any hazardous substance intended, or packaged in a form suitable, for use in the household which the Secretary by regulation classifies as a 'banned hazardous substance' on the basis of a finding that, notwithstanding such cautionary labelling as is . . . required by this chapter [the substance is so hazardous that] public health and safety can be adequately served only by keeping such substance . . . out of . . . interstate commerce."

Section 1261(q)(2) provides that the procedure for issuing, amending or repealing regulations under Section 1261(q)(1)(B) shall be governed by the notice, hearing, publication, transcript and judicial review provisions of the Food, Drug and Cosmetic Act, 21 U.S.C. §§ 371(e), (f) and (g).

The term "hazardous substance" is defined in Section 1261(f)(1)(A) as "[a]ny substance or mixture of substances which (i) is toxic . . . ." Section 1261(g) provides in pertinent part that:

"[t]he term 'toxic' shall apply to any substance . . . which has the capacity to produce personal injury or illness to man through ingestion, inhalation, or absorption through any body surface."

Section 1261(p) defines a "misbranded hazardous substance" as a hazardous substance failing to satisfy the packaging and labelling requirements of regulations issued under Sections 1472 and 1473 of Title 15, or otherwise failing to bear a label advising consumers of the hazard posed by the substance, appropriate warning symbols, first aid information, and directions for use.

Section 1262 provides that the Secretary may, in order to resolve uncertainty as to the applicability of the Act, declare a substance to be a hazardous substance under Section 1261(f)(1)(A) if the provisions of Section 371 of the Food, Drug and Cosmetic Act are observed and if, in addition, the Secretary has followed the proof and statement of findings requirement of 15 U.S.C. § 348(f)(2) and the 90-day waiting period of Section 348(f)(3).

In addition to the sections detailing the substantive reach of the statute, the Act contains several specific enforcement and penalty provisions. Section 1264 provides for criminal penalties for violations of Section 1263. Section 1265 provides for seizure of misbranded hazardous substances or banned hazardous substances, with procedures to follow those in admiralty cases.[2] Section 1268 provides, in relevant part, that "[a]ll criminal proceedings and all [seizure] or injunction proceedings shall be by and in the name of the United States." Finally, Section 1274 provides:

"(a) In the case of any article or substance sold by its manufacturer, distributor, or dealer which is a banned hazardous substance (whether or not it was such at the time of its sale), such article or substance shall, in accordance with regulations of the Secretary, be repurchased as follows:

"(1) The manufacturer of any such article or substance shall repurchase it from the person to whom he sold it, and shall—

"(A) refund that person the purchase price paid for such article or substance,

---

2. See Rule C, Supplemental Rules for Certain Admiralty and Maritime Claims, F.R.Civ.P. For a discussion of whether such procedures comport with the requirements of due process in this area, see *United States v. Articles of Hazardous Substance*, 588 F.2d 39 (4th Cir. 1978); *United States v. An Article Consisting of Boxes of Clacker Balls*, 413 F.Supp. 1281 (D.Wis.1976).

"(B) if that person has repurchased such article or substance pursuant to paragraph (2) or (3), reimburse him for any amounts paid in accordance with that paragraph for the return of such article or substance in connection with its repurchase, and

"(C) if the manufacturer requires the return of such article or substance in connection with his repurchase of it in accordance with this paragraph, reimburse that person for any reasonable and necessary expenses incurred in returning it to the manufacturer.

\* \* \* \* \* \*

"(3) in the case of any such article or substance sold at retail by a dealer, if the person who purchased it from the dealer returns it to him, the dealer shall refund the purchaser the purchase price paid for it and reimburse him for any reasonable and necessary transportation charges incurred in its return.

"(b) For the purposes of this section, (1) the term 'manufacturer' includes an importer for resale, and (2) a dealer who sells at wholesale an article or substance shall with respect to that sale be considered the distributor of that article or substance."

Two provisions of the Consumer Product Safety Act of 1972 are also relevant to the Federal Hazardous Substances Act. 15 U.S.C. § 2079(a) transfers the functions of the then-Secretary of Health, Education and Welfare under the Federal Hazardous Substances Act to the Consumer Product Safety Commission. Section 2079(d) provides that a consumer risk which could be covered by action under the Federal Hazardous Substances Act may not be regulated under the more general provisions of the Consumer Product Safety Act unless the Commission finds by rulemaking, in accordance with the informal procedures of 5 U.S.C. § 553 of the Administrative Procedure Act, that "it is in the public interest to regulate" under the Consumer Product Safety Act. 15 U.S.C. § 2072, also enacted as part of the Consumer Product Safety Act of 1972, as amended in 1976, provides that:

"(a) Any person who shall sustain injury by reason of any knowing (including willful) violation of a consumer product safety rule, or any other rule or order issued by the Commission may sue any person who knowingly (including willfully) violated any such rule or order in any district court of the United States in the district in which the defendant resides or is found or has an agent, subject to the provisions of section 1331 of Title 28 as to the amount in controversy, shall recover damages sustained, and may, if the court determines it to be in the interest of justice, recover the costs of suit, including reasonable attorneys' fees (determined in accordance with section 2059(e)(4) of this title) and reasonable expert witnesses' fees.

"(b) The remedies provided for in this section shall be in addition to and not in lieu of any other remedies provided by common law or under Federal or State law."

## 2. Legislative History

The original purpose of the Federal Hazardous Substances Act, initially entitled the Federal Hazardous Substances Labelling Act, Pub.L.No. 86–613, 74 Stat. 376, was to provide nationally uniform requirements for cautionary labelling of "packaged hazardous substances" intended or suitable for use in the home. See H.R.Rep.No. 1861, 86th Cong., 2d Sess. 1, *reprinted in* [1960] U.S. Code Cong. & Admin. News at 2833. The original Act defined "hazardous substance" as including a "toxic" substance, as in present Section 1261, and stated in Section 4 of the Act that it would be a violation of the Act to introduce into interstate commerce any hazardous substance not labelled in accordance with the Act and any applicable regulations (now Section 1263, as amended). The House report indicates that Section 4 was patterned after the corresponding section of the Food, Drug and Cosmetic Act. Section 5 of the Act (now Section 1264, as amended) provided that violations as defined in Section 4 were subject to criminal penalties; the legislative

history indicates that this was intended to be the sole direct penalty for violations of Section 4, H.R.Rep.No. 1861, 86th Cong., 2d Sess., reprinted in [1960] U.S. Code Cong. & Admin. News at 2841. Section 6 of the Act, now Section 1265, as amended, provided for seizure and condemnation of mislabelled hazardous substances, with such seizure to be in the name of the United States. The Act further authorized the Secretary of HEW to declare substances subject to the Act's labelling requirements by regulation, a provision now codified at 15 U.S.C. § 1262, as amended. Thus, the original Act outlined an area of specific federal concern, and provided that such concern be addressed by administrative regulations, enforced by possible criminal penalties against violators and possible seizure of violating items in the name of the United States.

In 1966, the Act's scope was extended by the Child Protection Act of 1966, Pub.L.No. 89–756, 80 Stat. 1304, to include provisions banning certain hazardous toys and other articles intended for use by children and banning certain other articles intended for general household use which were too dangerous to be distributed even if labelled with adequate warnings.[3] The amending legislation contains provisions on preemption of state law labelling requirements, but does not discuss preemption as to the Act's other coverage, including the ban on certain items. See H.R.Rep.No. 2166, 89th Cong., 2d Sess., reprinted in [1966] U.S. Code Cong. & Admin. News, p. 4095 at 4100. The short title of the Act was changed to its present form. Provisions as to enforcement and remedies for violations of the Act were not changed.

The next expansion of the Act came with the Child Protection and Toy Safety Act of 1969, Pub.L.No. 91–113, 83 Stat. 189. This legislation extended the Hazardous Substances Act's coverage to include toys and other articles intended for children's use which pose electrical, mechanical or thermal dangers. In addition, Section 4 of the amending legislation added a new remedial provision, currently Section 1274, to the Hazardous Substances Act, providing for repurchase of banned hazardous substances by distributors and, in turn, by manufacturers. The House report accompanying the amending legislation explains that this requirement might fall on distributors or manufacturers after the banned hazardous substance had been purchased by retailers for sale to consumers. H.R.Rep.No. 91–389, 91st Cong., 1st Sess., reprinted at [1969] U.S. Code Cong. & Admin. News, pp. 1231, 1241. The purpose of this new provision appears to have been to protect retailers and wholesalers from incurring large losses when a product they intended to distribute is banned as unsafe. See remarks of Senator Hugh Scott, 115 Cong. Rec. 20808 (July 25, 1969).

In 1972, Congress created the Consumer Product Safety Commission, an independent agency, to coordinate federal policy with respect to regulation of food, drugs and other consumer products. Consumer Product Safety Act of 1972, Pub.L.No. 92–581, 86 Stat. 1227. The Senate Report accompanying the bill explains that certain regulatory statutes predating the 1972 Act, including the Federal Hazardous Substances Act, were brought under the jurisdiction of the Consumer Product Safety Commission, rather than being repealed in favor of the more general provisions of the Consumer Product Safety Act, both because the earlier legislation represented explicit findings by Congress as to specific consumer hazards and in order to avoid duplicative regulatory activity under the new Act when the older acts had been operating efficiently in their areas of concern. S.Rep.No. 92–835, 92d Cong., 2d Sess., reprinted at [1972] U.S. Code Cong. & Admin. News, pp. 4573, 4592.[4]

3. The Act's original labelling requirements were also extended to cover unpackaged as well as packaged goods.

4. The conference committee rejected, however, a further provision in the Senate bill establishing a new provision for pre-distribution screening for toxicity for products to be used around the home or by children, Conf.Rep.No. 92–1593, 92d Cong., 2d Sess., reprinted at [1972] U.S. Code Cong. & Admin. News, pp. 4596, 4653.

### 3. Express Authorization of Private Damage Remedy

It is clear that none of the provisions of the Federal Hazardous Substances Act set forth above expressly creates a private cause of action for damages for violation of the Act. Section 1263 states the substance of the Act without stating a remedy for the Act's violation; Section 1261 merely defines the terms used in Section 1263; Section 1262 relates to regulatory activity by the government; Sections 1264, 1265 and 1268 describe enforcement proceedings by or on behalf of the government; and Section 1274 is silent as to how the repurchase requirement it creates is to be enforced.

■■■ The private damage remedy provisions of the related Consumer Product Safety Act are also inapplicable by their terms. The cause of action created by Section 2072 does not arise in the absence of valid regulatory action by the Commission under the Consumer Product Safety Act. In the case of Tris-treated garments and fiber, the Commission has issued no regulations under the Consumer Product Safety Act (and is, in fact, required to proceed by means of the Federal Hazardous Substances Act rather than the Consumer Product Safety Act unless it finds good reason not to do so). Further, once the initial Tris regulations which the Commission had issued under the Federal Hazardous Substances Act were found to be without effect, see *Springs Mills, supra*, the Commission indicated that it would proceed by individual enforcement action rather than by regulation under the Hazardous Substances Act, so that Section 2072 cannot be applied by analogy to create a private cause of action for violation of Commission regulations governing Tris-treated objects. Moreover, Section 2072's provisions have been construed to limit the available private cause of action under that section to actions brought by members of the consuming public, excluding actions brought by one manufacturer against a fellow manufacturer. *Plaskolite, Inc. v. Baxt Industries, Inc.*, 486 F.Supp. 213 (N.D.Ga., 1980).

It thus appears that if Rangaire has a federal cause of action for damages resulting from this alleged injury, it must be an implied cause of action under the substantive provisions of the Hazardous Substances Act.

### 4. Implied Cause of Action

■■■ The Court must, accordingly, consider whether an implied cause of action exists under the Act. Two of the Act's substantive provisions might be construed to apply to this situation: Section 1263, which makes introduction of a banned hazardous substance into interstate commerce a violation of the Act, and Section 1274, the repurchase section, although recovery under the latter section would presumably be limited to repurchase of goods sold, or equivalent damages. As noted above, the district court in *Springs Mills*, after considering the legislative history of the Act, interpreted Section 1274 to require a full due process hearing on whether a substance is hazardous within the meaning of Section 1261(f)(1)(A) before the repurchase requirements could be enforced; the court's interpretation invalidated Commission regulations ordering repurchase when no such hearings had been conducted, but presumably would not bar private actions under the section, as a sufficient hearing would be provided by the lawsuit itself. See Consumer Product Safety Commission Statement of Policy, *supra* (justifying Commission enforcement actions against Tris-treated products after *Springs Mills* on just such reasoning).

### (a) General Legal Standard

The test for whether a cause of action should be implied under a federal statute has been refined in several Supreme Court opinions. In *J. I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), the Court ruled that a private cause of action should be implied under Section 14(a) of the Securities Exchange Act, 15 U.S.C. § 78n(a), considering such factors as Congressional intent in enacting the section, the fact that the parties seeking to sue

were those shareholders whose rights of corporate suffrage Congress intended to protect, and the need for private enforcement of the proxy rules to carry out the purposes of the section.

In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Court, in rejecting a claim that a private cause of action should be implied under 18 U.S.C. § 610, summarized the factors to be considered as follows: first, "is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted'"; second, "is there any indication of any legislative intent, explicit or implicit, either to create such a remedy or to deny one"; third, "is it consistent with the underlying purpose of the legislative scheme to imply such a remedy for the plaintiff"; and fourth, "is the cause of action one traditionally relegated to state law . . . so that it would be inappropriate to infer a cause of action based solely on federal law?" *Id.* at 78, 95 S.Ct. at 2088.

More recent Supreme Court cases, while applying the four factors outlined in *Cort v. Ash*, see *e. g.*, *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), have also suggested that the intent of Congress as indicated by the specific wording of the statute and its legislative history should be weighed most heavily in determining whether a private cause of action exists. *Transamerica Mortgage Advisors, Inc. v. Lewis*, 441 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979).

(b) Decisions under the Act

Three lower courts have commented on whether a private cause of action for damages may be implied under the Federal Hazardous Substances Act, but none has considered the issue at length or discussed the question explicitly in terms of the *Cort v. Ash* standards. In *Fine v. Philip Morris*, 239 F.Supp. 361 (S.D.N.Y.1964), the issue before the district court was whether the action would be remanded to state court as

improvidently removed. Plaintiff's complaint, which sought damages from various cigarette manufacturers in connection with plaintiff's lung cancer, contained one claim based on the then Federal Hazardous Substances Labelling Act for failure to attach adequate warning labels to cigarette packages. The court granted plaintiff's motion to remand as to the other 28 claims in the complaint, but denied the motion as to the asserted implied cause of action, without ruling on the legal sufficiency of that claim:

> "On this motion to remand, the question is solely whether this court has jurisdiction, not whether the sixth cause of action states a claim on which relief can be granted. Since this cause of action asserts a federal claim which is not plainly insubstantial, this court has jurisdiction, regardless of whether it ultimately turns out that the claim is good or bad." 239 F.Supp. at 363.

In *Cross v. Board of Supervisors*, 326 F.Supp. 634 (N.D.Cal.1968), *aff'd*, 442 F.2d 362 (9th Cir. 1971), the court, in reviewing a *pro se* complaint alleging mislabelling on the part of distributors of air deodorizers and fresheners, indicated that plaintiff did not have an implied cause of action for damages under either the Federal Trade Commission Act or the Federal Health Substances Act since plaintiff had not shown any damages to herself from the alleged mislabelling. The court went on to state that civil recovery under the Federal Hazardous Substances Act might be "applied [sic] under appropriate circumstances," citing *Fine, supra* (a case specifically declining to reach this question!). The *Cross* court reached this result, further, without reviewing the legislative history of the Federal Hazardous Substances Act, which indicates, as discussed above, that the labelling provisions at issue were modelled after the provisions of the Food, Drug and Cosmetic Act, under which, as both the *Cross* court and other courts [5] have ruled, no private cause of action exists.

---

5. See, *e. g.*, *State of Florida ex rel. Broward County v. Eli Lilly & Co.*, 329 F.Supp. 364 (S.D.Fla.1971); *Clairol, Inc. v. Suburban Cosmetics*, 278 F.Supp. 859 (N.D.Ill.1968).

In *Meredith v. Glamorene Products Corp.*, 55 F.R.D. 397 (E.D.Wis.1972), a case in which the court had diversity jurisdiction over plaintiff's state law claims, the court, ruling on a statute of limitations question, noted that plaintiff's claim for damages for mislabelling under the Federal Hazardous Substances Act "also involves federal question jurisdiction," *id.* at 398, without considering whether or not such a claim stated a claim on which relief could be granted.

The case law under the Act is thus not dispositive of the issue of whether a private cause of action may be implied under Sections 1263 or 1274.

### (c) Analysis

After considering the factors suggested in *Cort v. Ash, supra*, especially the legislative history of the Federal Hazardous Substances Act, this Court concludes that no private cause of action should be implied under these sections.

First, the legislative history of the Act shows that the class Congress intended to protect is that of consumers, members of the buying public, and especially children for whose use toys and other articles are purchased. Plaintiff does not fall within this class, *cf. Plaskolite, supra.* Section 1274, it is true, does evidence an intent to provide a remedy equivalent to equitable rescission for retailers and wholesalers down the distribution chain from the manufacturer of a banned hazardous substance, but concern for protection of manufacturers of finished products such as Riegel from manufacturers of raw materials such as Celanese is "at best a secondary concern," *Cort v. Ash, supra*, 422 U.S. at 81, 95 S.Ct. at 2089, of even that section: see remarks of Senator Scott, *supra*, indicating that Section 1274 was intended to provide relief for *small* toy retailers, those who could be economically crippled by a government ban, as well as to encourage those retailers to dis-

tribute American-made toys (for which reimbursement would be available) rather than foreign-made toys.[6]

Secondly, neither the language of the Act nor its legislative history provides an indication that Congress intended to create the private damage remedy suggested by plaintiff. The Act originally focussed on setting informational standards. Enforcement was to be by government action alone, as in the Food, Drug and Cosmetic Act. When the Act was broadened to include a direct ban on certain types of unsafe products, Congress appears to have intended that any ban—involving, as it must, a regulatory determination that an object or substance was so hazardous that the public health and safety would be endangered by its circulation—would, again, be enforced by government action, by the regulatory agency making the safety determination, not by private parties. The subsequent enactment of Section 1274, which indicates a Congressional intent to shift certain economic burdens imposed by governmental regulatory action, does not, again, indicate that Congress intended to provide for private enforcement of that section, much less of the Act's bans under Section 1263; a more logical reading is that, as in fact happened in the Commission's initial Tris regulations, Section 1274 would be enforced by the regulatory authorities enforcing the product ban.

Furthermore, in 1972, in enacting the Consumer Product Safety Act, Congress specifically reviewed both the need for the regulatory mechanism set up by the Federal Hazardous Substances Act and the usefulness of private enforcement in promoting consumer protection, without indicating that private enforcement of the Hazardous Substances Act would be useful or desirable. If Congress had so intended, it could have, in bringing the Federal Hazardous Substances Act under the Consumer Prod-

---

**6.** The Court notes, in addition, that implying a private cause of action in this case under Section 1274 would require viewing Swift and Piedmont as mere agents of Riegel, making Riegel a direct purchaser from Celanese as required by the section (an interpretation which

may well be questionable); and that, as discussed above, Riegel's damages under the section would be limited to the relief specified (repurchase or its equivalent cost), and thus would not cover the bulk of Riegel's claimed damages.

uct Safety Commission's administrative authority, specifically created a private remedy under the Hazardous Substances Act to aid the Commission in its enforcement of the statute; or could have specified violation of the Federal Health Substances Act as one of those violations giving rise to a private cause of action under 15 U.S.C. § 2072. Congress did neither. There is thus not only no indication that Congress intended to create a private remedy under the Hazardous Substances Act, but also the suggestion, as stated in *Touche Ross, supra,* that "when Congress wished to provide a private damage remedy" in this area "it knew how to do so and did so expressly," 442 U.S. at 572, 99 S.Ct. 2479, 2487, and accordingly, that by not so providing here, Congress intended to create no such remedy.

Thirdly, it is difficult to see how the consumer protective purposes of the Act generally, or the specific intent of Section 1274 to protect small retailers and encourage distribution of U.S.-made goods, could be furthered in any but the most indirect way by allowing a children's clothing manufacturer to recover damages from its fiber supplier.

Finally, it appears that plaintiff's claims against Celanese for damages caused by Celanese's supplying Riegel with a defective component of Riegel's manufactured product are the type of claims traditionally covered by state law provisions on product liability, fraud, breach of contract, and breach of warranty. The Consumer Product Safety Act specifically states that it was not intended to displace such state law remedies, see 15 U.S.C. § 2072(b), so that it cannot be argued that preemption is a general feature of federal consumer legislation. Further, the legislative history of the Federal Hazardous Substances Act shows that any preemptive intent under the Act was directed at preventing potential conflict between state and federal labelling requirements, not at supplanting state law damage remedies when a manufacturer alleges injury by a supplier.

Defendant's motion to dismiss this count of Riegel's claim for failure to state a cause of action is, accordingly, granted.

## B. Pendent jurisdiction

The Court further concludes that it should dismiss the remaining state law claims in plaintiff's complaint under *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). As previously discussed, Riegel has not alleged a federal law claim sufficient to invoke the jurisdiction of this Court, so that dismissal appears proper under the *Gibbs* substantiality test, see 383 U.S. at 726, 86 S.Ct. at 1139, see also *Crane Co. v. American Standard,* 603 F.2d 244, 254 (2d Cir. 1979). Moreover, even if the federal claims here are viewed as sufficiently substantial to create federal question jurisdiction, dismissal of the remaining claims appears warranted as a discretionary matter. While it is true that the federal standards for toxicity under the Federal Hazardous Substances Act may be relevant to certain of plaintiff's state law claims, issues of state products liability law appear to predominate as to those claims. Further, it is clear that plaintiff will not be barred from pressing its state law claims in a state forum by running of the state statute of limitations, see *Federman v. Empire Fire and Marine Insurance Co.,* 597 F.2d 798, 809 (2d Cir. 1979), since plaintiff filed a state law action on these claims in Supreme Court, New York County, during the pendency of this motion.

Accordingly, the remaining counts in plaintiff's complaint are dismissed without prejudice, see *Gibbs, supra,* 383 U.S. at 726–27, 86 S.Ct. at 1139.

*Summary*

Plaintiff's first claim for damages based on an implied cause of action under Section 1263 of the Federal Hazardous Substances Act is dismissed with prejudice for failure to state a claim on which relief may be granted. Plaintiff's remaining state law claims are dismissed without prejudice as inappropriate subjects for the exercise of

pendent jurisdiction under *United Mine Workers v. Gibbs.*

SO ORDERED.