DETERMINED IN

# THE SUPREME COURT

OF

# OREGON.

Argued September 17, decided September 30, 1913.

## GOODWIN *v.* ROWE.*

(135 Pac. 171.)

**Master and Servant—Injuries to Third Person—Negligence of Servant —Master's Liability.**

1. A master's responsibility for the torts of his servant arises only when the servant is acting within the real or apparent scope of his employment and in the line of his duties, so that, if the servant acts beyond the limits of his employment and commits a wrong disassociated with his master's business, the latter is not responsible.

**Master and Servant—Injuries to Third Person—Negligence of Servant —Scope of Employment.**

2. In a suit against the proprietors of a drug-store for injuries to plaintiff due to the alleged negligence of an unlicensed clerk in pouring undiluted trikresol on plaintiff's arm, the complaint alleged that, after a physician had instructed and requested the clerk to prepare a 1 per cent solution of trikresol for use on plaintiff's arm, the physician left the pharmacy, and the clerk negligently, and because of his incompetency in undertaking to fill the prescription, prepared for and gave to plaintiff a quantity of pure and unadulterated trikresol, which caused the injury complained of. *Held,* that the substantive act alleged was the supplying of a dangerous solution of medicine, when a harmless or beneficial one had been prescribed, which constituted negligence within the scope of the clerk's employment, for the result of which the master was liable.

---

*The question of the master's liability for injury done by servant to third person in use of deleterious drug placed in his custody is the subject of a note in 10 L. R. A. (N. S.) 374.

As to whether the fact that a drug clerk is a licensed pharmacist relieves his employer from liability for his negligence or lack of skill, see note in 39 L. R. A. (N. S.) 275.　　　REPORTER.

Druggists—Unlicensed Clerk—Negligence.

3. Under Section 4750, L. O. L., declaring that it shall be unlawful for any ·person to sell any drug, medicine or chemical, or to dispense or compound any prescription of a medical practitioner, unless such person be a registered pharmacist or a registered assistant pharmacist, a sale of unadulterated trikresol by an unregistered drug clerk to plaintiff on a physician's prescription for a 1 per cent solution thereof was conclusive evidence of negligence, in an action against the druggist for injuries sustained by the use thereof.

Druggists—Injuries to Person Using Drugs—Statutory and Common-law Negligence.

4. Section 4750, L. O. L., makes it unlawful for any person to sell any drug or medicine or dispense or compound any prescription of a medical practitioner, unless such person be a registered pharmacist or a registered assistant pharmacist. Plaintiff alleged that he went to defendant's drug-store, which was in charge of an unregistered clerk, and, a physician having prescribed a 1 per cent solution of trikresol to be used as a wash on plaintiff's arm, such clerk negligently poured on plaintiff's arm and sold to him undiluted trikresol, the effect of which was to burn the flesh and cause the injuries complained of. *Held*, that the complaint charged common-law and statutory negligence, both of which, in the absence of a motion to compel plaintiff to elect on which he would rely, were properly submitted to the jury.

[As to the liability of druggists, see note in 55 Am. St. Rep. 255.]

From Multnomah: WILLIAM N. GATENS, Judge.

Department 2.    Statement by MR. JUSTICE McNARY.

This is an action by Orton E. Goodwin against Edgar W. Rowe and Harry J. Martin, doing business under the firm name and style of Rowe & Martin, to recover damages for personal injuries, which resulted in a verdict and judgment against defendants for $7,250. After alleging that in the summer of 1909 defendants were partners engaged in conducting a retail drug-store in Portland, Oregon, the complaint asserts: That at the time of the injury to plaintiff the pharmacy was in charge of one G. H. Hall, an incompetent drug clerk, who was neither a registered pharmacist nor registered assistant pharmacist, and who possessed no knowledge of the properties of drugs and medicines in general, and trikresol in particular, which situation was known to

defendants; that on July 17, 1909, the plaintiff was
suffering from a slight inflammation of his right wrist
and forearm, and in that condition called at the phar-
macy of defendants, in which Hall and Dr. M. J. Denny,
a duly licensed medical practitioner, were present;
that Dr. Denny, in the presence and hearing of Hall,
did prescribe and recommend for immediate use a
wash and application of 1 per cent solution of trikresol
for plaintiff's wrist and forearm, and instructed and
requested Hall to prepare a compound for plaintiff's
immediate use of 1 per cent solution of trikresol, a
dangerous and highly caustic liquid; that, when ap-
plied in the unadulterated state, or in a larger solu-
tion than 5 per cent to the human body, trikresol breaks
and cooks the flesh and skin, and destroys the tissues
thereof; that a 1 per cent solution of trikresol or any
solution thereof not to exceed 5 per cent could have
been applied to plaintiff's forearm without harmful
results; that, after prescribing and instructing the
clerk to prepare a 1 per cent solution of trikresol, the
physician left the drug-store, and thereupon Hall did
carelessly and negligently, and because of his incompe-
tency, prepare for and sell to plaintiff a quantity of
unadulterated trikresol, and did bind and wrap plain-
tiff's forearm, wrist and fingers with a bandage of
gauze, and did pour pure trikresol on the bandage,
which resulted in the burning and cooking of plain-
tiff's flesh and skin.   Concluding, the pleader asserts
that: "By reason and on account of said application
and use of said pure and unadulterated trikresol, and
as a direct and proximate result of the negligence of
defendants and defendants' said employee and ser-
vant, all as hereinbefore alleged, plaintiff's said wrist
and forearm and hand and fingers were burned and
cooked and severely and permanently injured and dis-
figured and scarred, and the tissues of the flesh and skin

thereof were destroyed, and said trikresol was absorbed and taken into his system so that it set up and caused intestinal ulcers, and his digestive organs and his nervous system were and are seriously and permanently impaired and affected."

Defendants, after denying the material portions of the complaint, rest their defense upon the following statement:

"That on July 17, 1909, plaintiff called at the store of these defendants, and applied to G. H. Hall, who was then in the employ of these defendants as a drug clerk, for treatment for an inflammation of his wrist and forearm, and, after looking at the said wrist and forearm, said Hall refused to treat or prescribe any remedy for said inflammation, and advised the said plaintiff to secure the services of a physician; that plaintiff then and there employed Dr. M. J. Denny, who was then in the store, and being the same M. J. Denny mentioned in plaintiff's complaint, to examine and prescribe a remedy for the inflammation of plaintiff's wrist and forearm, and, at the instance and request of plaintiff and said Denny, said Hall bandaged plaintiff's said wrist and forearm and applied the said trikresol in the manner directed by the said Denny, and that the said Denny was present during the bandaging of plaintiff's said wrist and forearm and the application of the said trikresol, and that the plaintiff's said wrist and forearm were bandaged in the manner and said trikresol applied thereto in the exact state prescribed and directed by the said Denny, and that the said Hall, during all of said time and in the performance of all of said acts mentioned in plaintiff's complaint, acted solely under the advice and direction of said Denny, and in no other manner, and, in the bandaging of plaintiff's said wrist and forearm and the application of said trikresol thereto, said Hall acted solely in the capacity of nurse for plaintiff, and

solely under the direction and advice of said Denny, and in no other capacity or manner.''

The reply contained a general denial.  AFFIRMED.

For appellants there was a brief over the names of *Mr. Ralph E. Moody, Mr. W. C. Healion* and *Mr. Lester B. Craven,* with an oral argument by *Mr. Craven.*

For respondent there was a brief over the name of *Malarkey, Seabrook & Stott,* with an oral argument by *Mr. Ephraim B. Seabrook.*

MR. JUSTICE MCNARY delivered the opinion of the court.

Upon the graver issues of the case, the testimony demonstrates that defendants' pharmacy was, at the time of the plaintiff's misfortune, under the exclusive control of an unregistered drug clerk, who supplied plaintiff with and applied to his forearm, wrist and fingers pure trikresol, an extremely caustic drug.

The clerk and the physician gave variant testimony concerning what occurred in the drug-store about the time of the administration of the medicine; Dr. M. J. Denny stating that: ''I think, as I entered the drug-store, Mr. Goodwin was in the back part of the store talking to Mr. Hall, and Mr. Hall called me to look at his arm, as he thought he had blood poison, and I was on my way home.  I intended to stop there for some— get some antiseptic tablets.  I walked on back, walked behind the counter.  As I did, I looked at his arm.  I didn't find anything.  Looked at Mr. Goodwin.  He stepped in.  I examined his arm.  I told him it wasn't blood poison, didn't amount to anything.  He insisted he must put something on it, and I says, 'If you must put something on it, you may put a little boracic acid solution.'  He didn't want to put on the boracic acid

solution, because the bottle that he had filled with boracic acid was empty. I suggested peroxide of hydrogen. His objection was he didn't want to open a bottle for the little he would use. This bottle of trikresol was standing there on a prescription case. I said, 'A 1 per cent solution of this trikresol.' I got what I went after, after getting that at this time, and I left the store. I said 'Good night' to Mr. Goodwin, as I went out. That is all I know about the case."

Mr. G. H. Hall, the clerk, testified that: "On the night of July 17th, be rather the 18th, about 1 o'clock— something like that—Mr. Goodwin come in, which I didn't know him at that time, and he says, 'I got something wrong with my arm,' and I looked at it, and the streaks—red streaks running up his arm to his elbow. He said it was paining him awful—somewhat swollen. He asked me to give him something. I told him I thought it was blood poison; he better see a doctor. 'Well,' he says, 'I can't get my doctor, Dr. Marsh, at this hour.' I says, 'Dr. Denny is sitting in the chair in front.' He says, 'Very well, call Dr. Denny.' I called him back; he looked at it; he says, 'Yes, I think you are right; that looks to me like blood poison.' I says, 'You know where the bandages are.' Kept the antiseptic in the case. He walks back there, and Mr. Goodwin with him. I asked him what he wanted. He stood for a moment, and says, 'What would you use on there?' I says, 'I would use the boracic acid and common cotton dressing on it, if I were doing it; it is your case.' He says, 'I will use some trikresol.' I says, 'Very well.' Got the bottle down. I says, 'There is the cotton bandages and gauze.' He says, 'I am tired; I have been out on a case.' He says, 'I am worn out.' He says, 'You wrap it up.' I says, 'What per cent solution do you want, Doctor?' He says, 'Put it on straight,' and I called his attention to

the bottle; that is, that it says it must not be used stronger than 1 and $1\frac{1}{2}$ per cent solution. He says, 'I don't care anything about that; I have used a 3 per cent as a douche,' mentioned that to me like that; 'I should apply it straight.' I says, 'You better put it on yourself.'· He says, 'No go ahead, and do it for me; I am tired,' and I refused it again. He insisted; seeing he was taking all responsibility, not me, so I put it on.''

Mr. H. J. Martin, one of the defendants, stated he instructed Hall to do no bandaging and to perform no act expected of a nurse or a doctor.

By the force of this showing, it is urged the trial court erred in refusing to grant a directed verdict, as the proximate cause of the injury was the bandaging of plaintiff's arm and the application of trikresol by the drug clerk, which acts were not within the scope of his employment.

1. The doctrine is proverbial that the master is not liable for every wrong which the servant commits while in the performance of his contract of employment; the responsibility of the master attaching in those instances when a servant is acting within the real or apparent scope of his employment and in line with his duties. As an inevitable deduction from these two propositions is the other, that, when a servant walks beyond the limits of his employment, for ever so short a distance, to perform an act disassociated with his master's business, the latter incurs no responsibility: 26 Cyc. 525; *Morier* v. *St. Paul Ry. Co.,* 31 Minn. 351 (17 N. W. 952, 47 Am. Rep. 793).

The rule is excellently stated by Justice Henry J. BEAN, in the case of *Dalrymple* v. *Covey Motor Car Company,* 66 Or. 533 (135 Pac. 91):

''Where a servant, having completed his duties to his master, then proceeds to prosecute some private

purpose of his own, the master is not liable. If the servant, while engaged about his master's business, merely deviates from the direct line of duty to accomplish some personal end, the master's responsibility may be suspended. But while the servant is pursuing his line of duty within the scope of his employment, even if in violation of express orders, a deviation therefrom is not an abandonment of the master's servant.''

2. With much zest, counsel for defendants argue that the bandaging of plaintiff's arm and the application of the trikresol were not within either the real or apparent scope of the drug clerk's employment, and that, in the undertaking, the clerk stepped aside from his master's business. Whether we accept this view or not is unimportant on account of the following language of the complaint: ''That after said Denny so as aforesaid prescribed and recommended and instructed and requested said Hall to prepare and compound a 1 per cent solution of trikresol for use as a wash and application on plaintiff's said wrist and forearm, said Denny left said pharmacy, and said Hall did carelessly and negligently, and because of his aforesaid incompetency and lack of necessary qualifications and knowledge of a pharmacist, then and there, in attempting and undertaking to fill and comply with said prescription and recommendation of said Denny, prepare for and sell and give to plaintiff a quantity of pure and unadulterated trikresol.''

The substantive act of which complaint is made was in the supplying of a dangerous solution of medicine, when a harmless or beneficial one had been prescribed. This constitutes negligence, for it is negligence to vend a harmful drug, when a harmless one has been prescribed, and the negligence of a clerk in this regard is the negligence of the proprietor: *Thomas* v. *Winches-*

*ter,* 6 N. Y. 397 (57 Am. Dec. 455); *Horst* v. *Walter,* 53 Misc. Rep. 591 (103 N. Y. Supp. 750); *Norton* v. *Sewall,* 106 Mass. 143 (8 Am. Rep. 298); *Davis* v. *Guarnieri,* 45 Ohio St. 470 (15 N. E. 350, 4 Am. St. Rep. 548); *Goldberg* v. *Hegeman Co.,* 60 Misc. Rep. 107 (111 N. Y. Supp. 679). Plainly it is immaterial who applied the dangerous antiseptic, if the clerk supplied, in response to the physician's prescription, a wrong solution. That Hall was working within the circle of his employment in filling the prescription and supplying the drug prescribed cannot be gainsaid. So, if the jury was convinced the clerk supplied a drug different from the one prescribed, it could logically deduce that such negligence was the proximate cause of plaintiff's injury.

3. Grievous complaint is made that the trial court committed error in admitting evidence that Hall was an unregistered pharmacist, and in giving certain instructions pertaining thereto, of which the following is illustrative: "I instruct you that, under the testimony in this case, G. H. Hall, who was in charge of defendants, store at the time in question, was not a registered pharmacist, and defendants, in leaving him in charge thereof, violated the laws of the State of Oregon, and, if you should find from a preponderance of the evidence that such violation of the laws of this state by defendants was the proximate cause of any injury you may so find plaintiff sustained, then your verdict should be for the plaintiff."

At the time of the injury, there was a statute extant to the effect (Section 4750, L. O. L.): "From and after the passage of this act it shall be unlawful for any person to manufacture, compound, sell, or dispense any drug, poison, medicine, or chemical, or to dispense or compound any prescription of a medical practitioner, unless such person be a registered pharmacist

or a registered assistant pharmacist within the meaning of this act, except as hereinafter provided. Every store, dispensary, pharmacy, laboratory, or office for the sale, dispensing, or compounding of drugs, medicines, or chemicals, or for the dispensing of prescriptions of medical practitioners, shall be in charge of a registered pharmacist.''

Prior to the enactment of the statute, the erroneous filling of a prescription was negligence for which an action would lie; since the adoption of the law, any violation thereof, from which an injury proceeds, is conclusive evidence of negligence.

4. A close examination of the complaint will reveal the situation that acts constituting both common-law and statutory negligence are pleaded. The first act of negligence is predicated on the failure of defendants to observe the pharmacy laws by leaving their store in the sole charge of an unregistered pharmacist, and, as a result reasonably to be expected therefrom, the clerk committed an act, causing the injury to plaintiff. Obviously this is a charge of statutory negligence. The other act of negligence pleaded is that the clerk negligently supplied a dangerous solution of a caustic drug instead of a harmless one, which had been prescribed. This is a charge of common-law negligence. Thus two statements are made of as many different grounds of recovery for the same right, and plaintiff, being required to make no election, could prove and recover on either.

It was a material and appropriate averment for plaintiff to have charged the specific breach of the statute quoted. The civil penalty that flows from a violation of a statute designed for the protection of the public health is well stated by Mr. Chief Justice Mc-BRIDE, in *Peterson* v. *Standard Oil Co.*, 55 Or. 522 (106 Pac. 341, Ann. Cas. 1912A, 625), in the following language:

"Whatever may be the rule where the measure of care is prescribed by the by-laws of a municipal corporation, logic and reason would seem to indicate that, where the laws of the state for the protection of the public have prescribed that certain precaution shall be observed * * such requirements constitute a legislative declaration of the minimum of care necessary under the circumstances, and that a less degree is negligence, as a matter of law, and that the pleading and proof necessary in case of injury arising under such circumstances need only to show the breach of the statutory requirement, the fact that such breach was the approximate cause of the injury, and the damages sustained thereby."

It was the exclusive office of the jury to consider both forms of negligence pleaded, and in support of which testimony was admitted, and fix upon the very act which was the efficient cause of the injury to plaintiff. Whether plaintiff's maltreatment was occasioned by the negligence of the clerk in supplying a drug different from the one prescribed, or whether it arose from a failure of the defendants to observe the statute, was a question the answer to which rested in doubt, and was therefore purely a consideration for the jury.

Many other assignments of error are made, some relating to the admission of testimony, and others to instructions given by the court, but a discussion thereof would be void of substantial benefit; the points decided herein being the only ones urged upon oral argument, or, for that matter, discussed appreciably in defendants' brief.

For the reasons herein assigned the judgment is affirmed.                                    AFFIRMED.

MR. JUSTICE MCBRIDE, MR. JUSTICE BEAN and MR. JUSTICE EAKIN concur.