Argued September 18; reversed October 9; rehearing denied
November 5, 1934

# STONE *v.* SHAW SUPPLY CO. ET AL.

(36 P. (2d) 606)

*Leo Levenson* and *Gus J. Solomon,* both of Portland (Irvin Goodman, of Portland, on the brief), for appellant.

*Robert R. Rankin,* of Portland (Wood, Montague, Matthiessen & Rankin and Bert S. Gooding, all of Portland, on the brief), for respondents.

KELLY, J.   The plaintiff was burned severely on his right breast, the burn extending down to the lower part of his abdomen and up to the left arm pit. The burn was caused by the ignition of a piece of yellow phosphorus, which plaintiff had put in the pocket of his shirt. The heat of plaintiff's body had caused the phosphorus to ignite.

The plaintiff was ten years old at the time and had secured the phosphorus as a gift from another boy who was nearly fifteen years old. The latter had purchased an ounce can of it from defendant, Shaw Supply Company.

This case is based upon the alleged negligence of defendant in selling the phosphorus to the older boy.

The questions herein presented arise by reason of the refusal of the trial court to give certain requested

instructions and the giving of a certain other instruction to which plaintiff excepted.

■■ One of the questions is whether the jury should have been instructed that it would be negligence per se for defendant to violate the provision of section 68-2016, Oregon Code 1930, to the effect that it shall not be lawful for any person to deliver or sell any deadly poison unless upon inquiry it be found that the purchaser is aware of its poisonous character.

It is urged that the statute mentioned is restricted in its effect to pharmacists and has no application to sellers of merchandise generally.

Section 68-2013, Oregon Code 1930, which is part of the same act as section 68-2016, supra, prescribes that said act shall not apply to a duly registered physician or dentist when supplying his own patients, if he is not keeping a pharmacy, open shop or drug store, nor to supplying by duly registered veterinary surgeons of medicine required in the practice of their profession, nor to the sale by grocers and dealers generally of fly paper, ant poison, squirrel poison, gopher poison, arsenical poison used for orchard spraying when sold in the original unbroken package and bluestone when properly labeled with the name of the dealer and marked "poison".

This does not except dealers generally from the provisions of section 68-2016, supra, or permit them to sell other poisons than those last above and in said section 68-2013 enumerated. Yellow phosphorus may be a constituent of squirrel poison, but as phosphorus alone it is not enumerated in said section last mentioned as one of the poisons which may be sold without restriction. It is within the inhibition of said section 68-2016, because, by the terms of said section, a deadly

poison is declared to be any drug, chemical or preparation, which, according to the standard works on medicine, toxicology, or materia medica, is liable to be destructive to adult human life; and yellow phosphorus comes within that category: Vol. IV, Witthaus & Becker Med. Juris. Forensic Med. and Toxicology, p. 630; Vol. VII, Reference Handbook of Medical Sciences, p. 182; Wood-LaWall, U. S. Dispensatory, 21st Ed., p. 838; Vol. II, Peterson, Haines, Webster, Legal Medicine and Toxicology, p. 146.

It is also argued that this is not a case of injury by poisoning, but by burning only. This argument is plausible, when based upon the commonly accepted view that poisoning occurs only when some deleterious substance is taken into the stomach by swallowing; but the foregoing statutory classification of deadly poison does not limit the term to substances, which, when swallowed, are destructive to adult human life.

As we construe the language of said statute, it, in effect, adopts the definition of a poison as being ''any substance which, when applied to the body externally, or in any way introduced into the system, without acting mechanically, but by its own inherent qualities, is capable of destroying life.'': *The People v. Van Deleer,* 53 Cal. 147; 2 Beck Med. Juris.

■ We think that the statutory inhibition applies to the sale of all deadly poison as above and in said statute defined and defines the duty of the seller thereof whether the result of the use of the poison is occasioned by swallowing it, inhaling it, injecting it, or merely, as in the case at bar, coming in close bodily contact with it.

The statute has for its purpose the protection of the public and we think that protection should be from

every manner of injury which may result from the inherent qualities of the proscribed poisons, except those inflicted by mechanical means only.

■ The violation of a statute enacted for the protection of the public constitutes negligence per se: *Nickolopolus v. Frank et al.*, 129 Or. 118, 121 (276 P. 695); *Goodwin v. Rowe*, 67 Or. 1 (135 P. 171, Ann. Cas. 1915C, 416), and *Peterson v. Standard Oil Co.*, 55 Or. 511, 522 (106 P. 337, Ann. Cas. 1912A, 625), and hence, by reason of the statute in question for any unauthorized person to sell a deadly poison other than those excepted by said section 68-2013 constitutes such negligence. The jury should have been so instructed.

Such sale cannot be made lawfully by an authorized person unless upon inquiry it be found that the purchaser is aware of its poisonous character and an entry be made in a book kept solely for that purpose stating the date, the hour of the sale, the name and address, and the signature of the purchaser, the kind and quality of the poison sold, a statement by the purchaser of the purpose for which it is required, and the name of the dispenser, who must be a duly registered pharmacist, or a duly registered assistant pharmacist.

■■ In the case at bar, the question whether the sale and delivery of the poison to the older boy by defendant was the proximate cause of the injury to plaintiff depends upon whether in the exercise of ordinary care a reasonably prudent person in defendant's place would have apprehended that the older boy would give it to a younger boy who, not knowing its peculiar and dangerous qualities, would misuse it to his injury. If not, then the sale and delivery thereof by defendant to the

older boy was not the proximate cause of plaintiff's injury; but if in the exercise of ordinary care such a course on the part of the older boy would reasonably be apprehended, then the casual connection between the sale and the injury was not broken by the action of the older boy. We think the jury should have been so instructed.

It is not a question whether the older boy was negligent in giving the phosphorus to plaintiff. It is a question whether in the exercise of ordinary care such a course would have been foreseen by defendant: Harper on Torts, section 123; 45 C. J., Subject, Negligence, p. 929, section 489 and cases cited in notes 30 and 31; 1 Shearman and Redfield on Negligence, 6th Ed., section 34.

Apparently, the trial court followed the view once prevailing that a prior tort-feasor was not liable where the act of a later tort-feasor intervened. The authorities cited in the above texts plainly disclose that in cases involving the sale and disposal of articles inherently dangerous this rule has been superseded by the doctrine of foreseeability.

We quote an excerpt from an opinion by Mr. Justice Dietzman of the Kentucky Court of Appeals:

"Does the fact that a second human actor, not acting in concert with a first human actor, intervenes with a tortious act which begins later in time to a tortious act of the first actor and which second tortious act is the only force in active motion at the time of the damage, exonerate the first actor from liability? Although the second human actor may be liable it does not necessarily follow that the first is exonerated. By the decided weight of authority the first will be liable if he foresaw or ought to have foreseen the commission of the second's tort. Although the earlier view was that the prior tort-feasor was never liable where a

later tort-feasor intervened—see *Vicars v. Wilcocks*, 8 East 1, (1806)—yet it has gradually come to be admitted that the earlier tort-feasor is liable in cases where the commission of the subsequent unlawful or tortious act and the happening of the damages ought to have been foreseen by him as not unlikely to follow." *Kentucky Independent Oil Co. v. Schnitzler, Admr.*, 208 Ky. 507, 514 (271 S. W. 570, 39 A. L. R. 979).

For the reasons above stated, the judgment of the circuit court is reversed and the cause remanded for such further proceedings as are not inconsistent herewith.

RAND, C. J., and CAMPBELL and BAILEY, JJ., concur.