667 P.2d 200

Juan ONTIVEROS and Rosario
Ontiveros, husband and wife,
Plaintiffs-Appellants,

v.

Peter S. BORAK, Sr. d/b/a Max's Termi-
nal Buffet, and John Does I through
X, inclusive, Defendants-Appellees.

No. 16486.

Supreme Court of Arizona,
En Banc.

July 5, 1983.

502

Charles M. Brewer, Ltd. by Stuart J. Reilly, Phoenix, for plaintiffs-appellants.

Fennemore, Craig, von Ammon, Udall & Powers by William L. Thorpe, Phoenix, for defendants-appellees.

FELDMAN, Justice.

Plaintiff brought this tort action for damages against the defendant, Peter Borak, Sr., d/b/a Max's Terminal Buffet (Borak), and others. The action against Borak, the owner of a tavern, was based on the claim that Borak's negligence in serving liquor to an intoxicated patron, Reuben Flores, had been a cause of a subsequent motor vehicle accident in which Flores had inflicted serious injuries on plaintiff. Flores was joined as a defendant.

Borak moved for summary judgment on the ground that under Arizona law a tavern owner was not liable for negligence in serving an underaged, incompetent or intoxicated patron who injured a third party in a subsequent automobile accident. The trial court agreed and granted the motion; it also found no just reason for delay and entered judgment in favor of Borak and against the plaintiff. See Ariz.R.Civ.P. 54(b), 16 A.R.S. Plaintiff filed notice of appeal to Division I of the Court of Appeals. After the appeal was at issue, the Chief Judge of that division petitioned to transfer the case to this court. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and Ariz.R.Civ.App.P. 19(b), 17A A.R.S.

▪ This case presents the issue of a tavern owner's common law liability for negligence in serving his or her patrons.

Believing the question is of considerable importance and that the public interest requires a speedy and final decision, we granted the petition for transfer in order to meet and finally resolve the issue so squarely presented by the facts of this case. While the evidence is conflicting, the case was decided on motion for summary judgment and we are therefore required to review the facts in the light most favorable to the party against whom summary judgment was taken. *Gulf Insurance Company v. Grisham,* 126 Ariz. 123, 124, 613 P.2d 283, 284 (1980). Acknowledging this principle, defendant properly conceded in oral argument that for the purpose of deciding the question of law presented on this appeal the facts are as follows:

On May 22, 1975, Flores left work and, as was his custom, went to Borak's bar before going home. According to Flores' statement and deposition, he there had "quite a few" beers, which were served by the owner's son, and then went across the street to another bar for a short time. He returned to Borak's bar and remained there until closing time was announced at approximately 8:00 p.m. During the afternoon and early evening Flores consumed approximately 30 beers. Unfortunately, he was able to leave the bar and get in his car, which was parked in the bar's parking lot,[1] and headed for home. A few blocks from the bar, he hit a fire hydrant, then swerved, saw cars from the other direction, swerved again and then "all of a sudden a man was there and I hit him. I told the police officer there was no need to take a breath test because I was drunk." Nevertheless, the police did administer a breathalyzer test; the result was a reading of .33, more than triple the point at which the law now forbids driving. *See* A.R.S. § 28–692(B).

Plaintiff survived the accident, but received a fractured skull, subdural hematomas and liver damage. These injuries allegedly resulted in partial paralysis and

---

1. The car belonged to Borak's son and had either been sold or lent to Flores some time before the date in question. We do not con-

sider this fact important in resolving the issues presented.

mental retardation. Plaintiff has been unable to work since the accident.

## COMMON LAW

■ Ordinarily, a plaintiff may maintain an action in negligence if he proves:

1. A duty, or obligation, recognized by the law, requiring the [defendant] to conform to a certain standard of conduct, for the protection of others against unreasonable risks.

2. A failure on [defendant's] part to conform to the standard required....

3. A reasonably close causal connection between the conduct and the resulting injury....

4. Actual loss or damage....

W. Prosser, *Handbook on the Law of Torts* § 30, at 143 (4th ed. 1971); *Wisener v. State,* 123 Ariz. 148, 149, 598 P.2d 511, 512 (1979).

■ At common law, however, a tavern owner is not liable for injuries sustained off-premises by third persons as the result of the acts of an intoxicated patron, even though the tavern owner's negligence in serving that patron was a contributing cause of the accident. *See Cruse v. Aden,* 127 Ill. 231, 234, 20 N.E. 73, 74 (1889); *Waller's Adm'r v. Collingsworth,* 144 Ky. 3, 6, 137 S.W. 766, 767 (1911); 45 Am.Jur.2d, *Intoxicating Liquors* § 553 (1969).

The seminal cases in Arizona on tavern owner ("dram shop") liability are *Pratt v. Daly,* 55 Ariz. 535, 104 P.2d 147, and *Collier v. Stamatis,* 63 Ariz. 285, 162 P.2d 125, decided in 1940 and 1945, respectively. Plaintiff argues correctly that neither case explicitly held that a tavern owner could not be held liable under the common law in a fact situation similar to the one presented by the case at bench. We agree; however, implicit, if not explicit, in both *Pratt* and *Collier* is the acceptance of the common law rule. Thus, it was recognized both within and without Arizona that *Pratt v. Daly* had approved and adopted the common law rule of nonliability. See, for example, the annotation to *Pratt v. Daly,* entitled *Right of Action at Common Law for Damages Sustained by Plaintiff in Consequence of Sale of Intoxicating Liquor or Habit-forming Drugs to Another,* 130 A.L.R. 352, 357 (1941). This was well understood by our court of appeals, and the common law rule of nonliability was applied for injuries which occurred both on and off the premises in cases such as *Lewis v. Wolf,* 122 Ariz. 567, 568, 596 P.2d 705, 706 (App.1979); *Profitt v. Canez,* 118 Ariz. 235, 236, 575 P.2d 1261, 1262 (App.1978); *Thompson v. Bryson,* 19 Ariz.App. 134, 138, 505 P.2d 572, 576 (1973); *Pierce v. Lopez,* 16 Ariz.App. 54, 57, 490 P.2d 1182, 1185 (1971); and *Vallentine v. Azar,* 8 Ariz.App. 247, 249, 445 P.2d 449, 451 (1968). We conclude, therefore, that the rule of nonliability for tavern owners has been the common law in Arizona.

■ However, the common law, which is judge-made and judge-applied, can and will be changed when changed conditions and circumstances establish that it is unjust or has become bad public policy. In reevaluating previous decisions in light of present facts and circumstances, we do not depart from the proper role of the judiciary.

Inherent in the common law is a dynamic principle which allows it to grow and to tailor itself to meet changing needs within the doctrine of stare decisis, which, if correctly understood, was not static and did not forever prevent the courts from reversing themselves or from applying principles of common law to new situations as the need arose. If this were not so, we must succumb to a rule that a judge should let others "long dead and unaware of the problems of the age in which he lives, do his thinking for him."

*Lewis v. Wolf,* 122 Ariz. at 568, 596 P.2d at 706 (quoting Mr. Justice Douglas, *Stare Decisis,* 49 Colum.L.Rev. 735, 736 (1949)). This court has adhered to that concept in the past. *Ryan v. State of Arizona,* 134 Ariz. 308, 310, 656 P.2d 597, 599 (1982); *Fernandez v. Romo,* 132 Ariz. 447, 449, 646 P.2d 878, 880 (1982); *Harris v. Buckeye Irrigation Co.,* 118 Ariz. 498, 502, 578 P.2d 177, 181 (1978); *Stone v. Arizona Highway Commission,* 93 Ariz. 384, 387, 381 P.2d 107, 109 (1963).

We turn, therefore, to reexamine the present common law rule, its basis and its applicability under the present conditions. In doing so, we are mindful of our words in *Noland v. Wootan,* 102 Ariz. 192, 193, 427 P.2d 143, 144 (1967):

> We take judicial notice of the terrible toll taken, both in personal injuries and property damage, by drivers who mix alcohol and gasoline . . . .

## CAUSATION

All counsel agreed at oral argument that the common law rule was not a rule of immunity. Indeed, it is impossible to imagine why, of all occupations, those who furnish liquor should be singled out for a judicially conferred blessing of immunity to respond in damages for their wrongful acts. The common law rule was one of nonliability, founded, as indicated in both *Pratt* and *Collier,* upon concepts of causation. In *Pratt,* this court indicated that the drinking of the liquor, and not the selling of it, is the act which causes the injury. We again acknowledge the obvious fact, mentioned in *Pratt,* that one cannot become intoxicated if one does not drink. However, the obverse is equally true: one cannot become intoxicated by drinking liquor unless someone furnishes it. Our common sense tells us that both the furnishing and the drinking are part of the chain of cause and effect that produces accidents such as the one in this case.

Arizona law holds that cause-in-fact exists if the defendant's act helped cause the final result and if that result would not have happened without the defendant's act. *McDowell v. Davis,* 104 Ariz. 69, 72, 448 P.2d 869, 872 (1968). Defendant's act need not have been a "large" or "abundant" cause of the final result; there is liability if the result would not have occurred but for defendant's conduct, even if that conduct contributed "only a little" to plaintiff's injuries. *Markiewicz v. Salt River Valley Water Users' Association,* 118

Ariz. 329, 338 n. 6, 576 P.2d 517, 526 n. 6 (App.1978) (citing *McDowell v. Davis, supra* ). Arizona also recognizes that more than one person may be liable for causing an injury and that a particular defendant may not avoid liability for his causative act by claiming that the conduct of some other person was also a contributing cause. *McDowell v. Davis, supra; see also* Recommended Arizona Jury Instructions, Negligence 4, Multiple Causation.

Therefore, as far as causation-in-fact is concerned, the general rule is that a defendant may be held liable if his conduct contributed to the result and if that result would not have occurred "but for" defendant's conduct. There are some dram shop cases where it would be possible to say as a matter of law that the defendant's acts did not contribute to the result,[2] and there are other cases, such as this, where cause-in-fact remains a question for the jury. Certainly no court can say as a matter of law that there can never be a causal relation between serving liquor to an underaged, incompetent or already intoxicated patron and the subsequent accident in which that patron becomes involved when he or she leaves the premises. Insofar as *Pratt v. Daly* or *Collier v. Stamatis* stand for such a principle, they are wrong.

Another part of the causation question is the concept of superseding cause.

> [This] is sometimes said to be a question of whether the [defendant's] conduct has been so significant and important a cause that the defendant should be legally responsible. But both significance and importance turn upon conclusions in terms of legal policy, so that this becomes essentially a question of whether the policy of the law will extend the responsibility for the conduct to the consequences which have in fact occurred.

Prosser, *supra,* § 42, at 244. The basic issue of intervening and superseding causes is whether a defendant "is to be held liable

---

2. Suppose, for instance, that Flores had consumed 30 beers at Borak's and "one more for the road" at the bar across the street. Without specific evidence it would be difficult to argue that the accident would not have happened "but for" the last drink.

for an injury to which he has in fact made a substantial contribution, when it is brought about by a later cause of independent origin, for which he is not responsible." *Id.* § 44, at 270.

The common law rule of tavern owner nonliability was mainly based upon the concept that the chain of legal causation between the selling of the alcohol and the injury was broken or "superseded by the voluntary act of the purchaser in imbibing the drink." *Collier v. Stamatis,* 63 Ariz. at 288, 162 P.2d at 126. We acknowledge, of course, that the customer who drinks to excess or the underage patron who drinks at all is at fault. To say that the immediate actor is at fault, however, is not to say that there is no liability to be imposed upon the remote actor. The policy of the law on questions of intervening and superseding cause has evolved to the rule that the original actor is relieved from liability for the final result when, and only when, an intervening act of another was unforeseeable by a reasonable person in the position of the original actor *and* when, looking backward, after the event, the intervening act appears extraordinary. *Herzberg v. White,* 49 Ariz. 313, 321–22, 66 P.2d 253, 257 (1937); *Serrano v. Kenneth A. Ethridge Contracting Company,* 2 Ariz.App. 473, 475–76, 409 P.2d 757, 759–60 (1966); *City of Phoenix v. Schroeder,* 1 Ariz.App. 510, 516–17, 405 P.2d 301, 307–08 (1965); Restatement (Second) of Torts §§ 435(2), comments c and d, and 442 (1965). However, where the negligent conduct of the first actor increases the foreseeable risk of a particular harm occurring through the conduct of a second actor, the "fact that the harm is brought about through the intervention of another force does not relieve the [first] actor of liability." *Id.* § 442(B).

The test, then, for whether the actions of a patron, such as Flores, constitute a superseding cause which relieves the tavern owner from liability is whether Flores' conduct was unforeseeable to one in Borak's position and whether the court can say with the benefit of hindsight that the occurrence of the harm through the conduct

of the intervening actor was both unforeseeable and extraordinary. Even if there were no authority on the issue, we could find it neither unforeseeable nor unexpected that a patron who was served 30 beers over the space of five or six hours became quite drunk. The only thing extraordinary about the whole situation is that this patron, with a blood-alcohol level of .33, was able to walk to his car. It was certainly neither unforeseeable nor unexpected that once Flores began driving he would become involved in an accident likely to cause death or serious injury. This elemental point has not escaped other courts.

> When alcoholic beverages are sold by a tavern keeper to a minor or to an intoxicated person, the unreasonable risk of harm ... to members of the traveling public may readily be recognized and foreseen; this is particularly evident in current times when traveling by car to and from the tavern is so commonplace and accidents resulting from drinking are so frequent.

*Rappaport v. Nichols,* 31 N.J. 188, 202, 156 A.2d 1, 8 (1959); *see also Campbell v. Carpenter,* 279 Or. 237, 240, 566 P.2d 893, 895 (1977). In fact, courts have recognized that the injury-producing conduct of the patron who has been served more alcohol while intoxicated is one of the very hazards which make the tavern owner's act negligent. *Vesely v. Sager,* 5 Cal.3d 153, 164, 486 P.2d 151, 159, 95 Cal.Rptr. 623, 631 (1971). The trend of modern authority is well summarized by the following words of the Supreme Court of Hawaii:

> We hold that the consequences of serving liquor to an intoxicated motorist, in light of the universal use of automobiles and the increasing frequency of accidents involving drunk drivers, are foreseeable to a tavern owner .... *The consumption, resulting inebriation and injurious conduct are therefore foreseeable intervening acts which will not relieve the tavern of liability.*

*Ono v. Applegate,* 62 Hawaii 131, 141, 612 P.2d 533, 540–41 (1980) (citations omitted) (emphasis supplied).

Common sense, common experience and authority all combine to produce the irrefutable conclusion that furnishing alcohol, consumption of alcohol and subsequent driving of a vehicle which is then involved in an accident are all foreseeable, ordinary links in the chain of causation leading from the sale to the injury. Under the facts of this case, a jury could find that Borak's furnishing of additional liquor to Flores after he became intoxicated was a cause of the injuries sustained by plaintiff. *Vesely v. Sager, supra.*

Borak argues, however, that as a matter of policy we should continue to hold that there is no "proximate cause" in dram shop cases. He contends that it will be difficult to sort out cause and effect in many cases since a patron who has already become intoxicated may be involved in an accident even without the "help" of the defendant who furnishes more alcohol. This contention is answered in the dissent in *Meade v. Freeman,* 93 Idaho 389, 462 P.2d 54 (1969). In criticizing the common law rule, Judge Prather stated:

> It is quite ordinary to observe that persons who commence drinking intoxicants pass through various stages from complete sobriety to incapacitating intoxication and unconsciousness.... When the person has imbibed sufficient liquor that the effects thereof are becoming obvious to the ordinary person, the imbiber is still able to control himself and his actions sufficiently to avoid injury to others. If the imbiber continues to drink intoxicants, however, his condition will worsen until he reaches the point that he can not control his thought or muscular processes. After the first signs of apparent and obvious intoxication have begun to show on a person who is drinking, it is within the knowledge and experience of nearly all people that such person should not indulge in any further use of intoxicants until his body has rid itself of that which he has already imbibed. When so viewed, I perceive no difference in regarding the sale of further intoxicants to one already drunk as a proximate cause of ensuing injuries [as] in those cases wherein the

sale of firearms to minors or incompetents, the sale of dangerous drugs to those known to be addicted, or the manufacture and release upon the market of dangerously defective commodities are held to form a basis for liability. The underlying principle of all of these cases is that the seller is sending out into the public a thing of danger which a reasonably prudent person under like circumstances would apprehend would be likely to cause injury to someone else.

> When most people walked and few had horses or carriages, ... it may have been that the common rule of law of non-liability arising from the sale of liquor to an intoxicated person was satisfactory. But the situation then and the problem in today's society of the imbiber going upon the public highways and operating a machine that requires quick response of mind and muscle and capable of producing mass death and destruction are vastly different.

*Id.* at 399–400, 462 P.2d at 64–65.

Judge Prather's words are even truer today, fourteen years after they were written. The statistics cited in the concurring opinion in *State ex rel. Ekstrom v. Justice Court,* 136 Ariz. 1, 663 P.2d 992 (1983), indicate a frightful toll—25,000 deaths and 650,000 injuries each year in motor vehicle accidents in which alcohol is a contributing cause. We believe, therefore, that the words of Division II of our Court of Appeals are correct:

> It seems clear that the common law rule is an anachronism, unsuitable to our present society, and that its reasoning is repugnant to modern tort theories.

*Lewis v. Wolf,* 122 Ariz. at 570, 596 P.2d at 708. We agree with the Pennsylvania Supreme Court that "[t]o serve an intoxicated person more liquor is to light the fuse." *Jardine v. Upper Darby Lodge No. 1973, Inc.,* 413 Pa. 626, 632, 198 A.2d 550, 553 (1964). Therefore, *Pratt v. Daly, supra,* and *Collier v. Stamatis, supra,* are overruled insofar as they stand for the proposition that the negligence of a tavern owner in contin-

uing to serve liquor to a patron who is or has become intoxicated can never be the legal cause of a subsequent accident. Insofar as the decisions of the court of appeals in *Lewis v. Wolf, supra; Profitt v. Canez, supra; Thompson v. Bryson, supra; Pierce v. Lopez, supra;* and *Vallentine v. Azar, supra,* stand for the same proposition, they are disapproved. The question of causation in such cases should ordinarily be a question of fact for the jury under usual principles of Arizona tort law.

## DUTY

Having held that lack of causation is not a viable support for the theory of nonliability of tavern owners, we now turn to the question of whether there is any other reason for this court to continue to recognize the rule. Defendant argues that problems of "duty" make recognition of a dram shop action impractical.

 Duty is a concept which arises out of the recognition that relations between individuals may impose upon one a legal obligation for the benefit of the other. Prosser, *supra,* § 42, at 244.

> In other words, "duty" is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, [if it exists] the duty is always the same, to conform to the legal standard of reasonable conduct in the light of the apparent risk.
>
> . . . . .
>
> But it should be recognized that "duty" is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.
>
> . . . . .
>
> No better general statement can be made, than that the courts will find a duty where, in general, reasonable men would recognize it and agree that it exists.

*Id.* at 324–27.

 The relation between individuals which imposes a legal obligation is usu-

ally a direct relationship between the plaintiff and defendant. Viewed in these terms, this court has already indicated "that an operator of a bar, although not an insurer of the safety of his patrons, owes a duty to exercise reasonable care and vigilance to protect them from reasonably foreseeable injury" at the hands of another patron. *McFarlin v. Hall,* 127 Ariz. 220, 225, 619 P.2d 729, 734 (1980) (tavern owner's duty to protect his patrons from injury at the hands of another patron who has become unruly).

However, a duty to the plaintiff may also arise out of a relation between the defendant and a third party whose negligence causes injury to the plaintiff. Prosser, *supra,* § 56, at 349. We believe that changing social conditions require recognition of a duty which extends to innocent third parties and which is based on the relation of the licensed supplier of liquor and his patron. We acknowledge that we deal here with defendant's obligation to help control the conduct of his patron in order to prevent that patron from injuring someone else. But the law has always recognized a duty to anticipate the intervening negligent conduct of others.

> The duty arises, in other words, only where a reasonable man would recognize the existence of an unreasonable risk of harm to others through the intervention of such negligence. It becomes most obvious when the actor has reason to know that he is dealing with persons whose characteristics make it especially likely that they will do unreasonable things. He may be required to guard an insane patient to prevent him from jumping from the hospital window, or to refrain from putting an intoxicated person off of a train into a railroad yard, or letting him have an automobile, or more liquor.

Prosser, *supra,* § 33, at 172, citing *Rappaport v. Nichols, supra,* and *Waynick v. Chicago's Last Dept. Store,* 269 F.2d 322 (7th Cir.1959), *cert. denied,* 362 U.S. 903, 80 S.Ct. 611, 4 L.Ed.2d 554 (1960). Thus, the common law recognizes a duty to take affirmative measures to control or avoid increasing

the danger from the conduct of others. Restatement (Second) of Torts, *supra,* § 315. Arizona has approved this concept. *Grimm v. Arizona Board of Pardons and Paroles,* 115 Ariz. 260, 267, 564 P.2d 1227, 1234 (1977).

Case law has recognized the principle in many situations. For instance, one who lends an automobile or dangerous instrument to an inexperienced or intoxicated person may be held liable for injuries inflicted by that person upon another. *See Johnson v. Casetta,* 197 Cal.App.2d 272, 17 Cal.Rptr. 81 (1961); *Harris v. Smith,* 119 Ga.App. 306, 167 S.E.2d 198 (1969); *Pennington v. Davis-Child Motor Co.,* 143 Kan. 753, 57 P.2d 428 (1936); *Deck v. Sherlock,* 162 Neb. 86, 75 N.W.2d 99 (1956); *Stone v. Shaw Supply Co.,* 148 Or. 416, 36 P.2d 606 (1934). These holdings have been translated into a finding of duty in common law dram shop cases. The rationale, put succinctly, is:

> The person who would put into the hands of an obviously demented individual a firearm with which he shot an innocent third person would be amenable in damages to that third person for unlawful negligence. An intoxicated person behind the wheel of an automobile can be as dangerous as an insane person with a firearm. He is as much a hazard to the safety of the community as a stick of dynamite that must be de-fused in order to be rendered harmless.

*Jardine v. Upper Darby Lodge No. 1973, Inc.,* 413 Pa. at 631–32, 198 A.2d at 553. Put more legalistically, the Alaska Supreme Court stated as follows:

> [I]t is clear that the vendor is under a duty not to sell liquor where the sale creates a risk of harm to the customer or to others. This conclusion flows from general principles of negligence law; every person is under a duty to avoid creating situations which pose an unreasonable risk of harm to others. In selling liquor to an intoxicated customer, where it is evident that the customer may injure himself or others as a result of the intoxication, a vendor is not acting as a reasonable person would. "The first prime requisite ... is to stop pouring alcohol into [the drunken customer]. *This is a duty which everyone owes to society and to law entirely apart from any statute.*"

We therefore hold that there is a general common law duty, independent of statute, requiring vendors to conduct themselves with reasonable care and prudence when dispensing alcohol.

*Nazareno v. Urie,* 638 P.2d 671, 674 (Alaska 1981) (citations omitted) (emphasis supplied), (quoting *Jardine v. Upper Darby Lodge No. 1973, Inc., supra,* and citing *Bernhard v. Harrah's Club,* 16 Cal.3d 313, 325, 546 P.2d 719, 726–27, 128 Cal.Rptr. 215, 222–23 (1976)); *Colligan v. Cousar,* 38 Ill. App.2d 392, 414, 187 N.E.2d 292, 302 (1963); *see also Berkeley v. Park,* 47 Misc.2d 381, 384, 262 N.Y.S.2d 290, 293 (1965) (recognizing coexistence of common law dram shop action and statutory action under a civil damage act expressly creating such an action).

■ Even if the existence of a tavern owner's duty to act with care when furnishing liquor to patrons could not be found by application of common law principle and authority, its existence could be postulated upon the affirmative requirements of statute. A.R.S. § 4–244(14) makes it unlawful for a licensee to furnish alcohol to an intoxicated person. Violation of this law is a misdemeanor. A.R.S. § 4–246. Borak argues, however, that these statutes were not enacted as safety measures but merely as regulatory measures affecting the liquor industry.

In *Collier v. Stamatis,* we acknowledged that the sale of liquor was a cause in fact of the injury, but held that it was "superseded by the voluntary act of the purchaser in imbibing the drink." 63 Ariz. at 288, 292–93, 162 P.2d at 126, 128. We went on to discuss the plaintiff's contention that the violation of the Arizona statute (§ 72–113, A.C.A. 1939) by sale to a minor was negligence per se and thus made the seller liable in tort. Judge Kelly, writing for the court, stated:

It is my view that the Statute ... cannot be fairly construed to have this effect. It is found in a Chapter ... which ... "is an attempt to establish a complete general code regulating the sale of intoxicating liquor in Arizona." Its purpose is to regulate the business *rather than to enlarge civil remedies.*

63 Ariz. at 289, 162 P.2d at 127 (emphasis supplied). Conversely, we held in *Mendelsohn v. Superior Court,* 76 Ariz. 163, 169, 261 P.2d 983, 988 (1953), that the liquor laws were designed "to protect the welfare, health, peace, temperance, and *safety* of all the citizens by providing for the strict regulation and control" of the industry. (Emphasis supplied.)

■ The two statements are not necessarily in conflict. While the plaintiff in *Collier, supra,* argued that the statute was enacted for the protection of minors and was "in effect the equivalent of the Civil Damage Act known to many jurisdictions," Judge Kelly stated, and we think correctly, that the legislative purpose was "to regulate the business rather than to enlarge civil remedies." *Id.* No doubt that was true and the legislature neither considered nor intended to enact a measure creating a new civil damage action. Conversely, we believe it fair to say that in enacting the statutes in question the legislature intended to regulate the business and one of their purposes in doing so was to promote the safety of our citizens.

■ We believe, however, that Judge Kelly erred in his characterization of the issue. The question before us is not whether the legislature established a statutory cause of action, but whether there is a "duty" or "obligation" imposed on the tavern owner. We believe that the portion of the statute forbidding the sale of liquor to an already intoxicated person was "enacted to protect members of the public who might be injured or damaged as a result of the intoxication which was aggravated by the particular sale of the alcoholic liquor." *Lopez v. Maez,* 98 N.M. 625, 631, 651 P.2d 1269, 1275; *Waynick v. Chicago's Last Dept. Store,* 269 F.2d at 325; *Walz v. City of Hudson,* 327 N.W.2d 120, 122–23 (S.D. 1982); *Berkeley v. Park,* 47 Misc.2d at 384, 262 N.Y.S.2d at 293–94. We believe, as does the Alaska Supreme Court, that "[a] duty of care and the attendant standard of conduct may be found in a statute silent on the issue of civil liability." *Nazareno v. Urie,* 638 P.2d at 675; *see also* Restatement (Second) of Torts, *supra,* § 286 comment d (indicating that when the legislature has adopted a statute requiring certain conduct and imposing either civil or criminal penalties for breach, the court is free to adopt and apply that standard in negligence actions notwithstanding that the legislature has failed to so provide).[3]

---

3. "The decision to adopt [either] standard is purely a judicial one, for the court to make. When the court does adopt the legislative standard, it is acting to further the general purpose which it finds in the legislation, and not because it is in any way required to do so." Restatement (Second) of Torts § 286 comment d. In the case at bench, we adopt a standard of duty by applying recognized theories of tort liability. We are not creating some new concept previously unrecognized at common law. A recognition of duty here is appropriate.

It is understandable that early cases did not recognize any duty of an innkeeper to the traveling public because a serious hazard did not exist. Through lack of necessity, this phase of negligence liability did not develop. However, there did exist general common-law rules of negligence liability based on foreseeability and proximate cause. * * * "Precedents drawn from the days of travel by stage coach do not fit the conditions of travel to-day. The principle that the danger must be *imminent* does not change, but the things subject to the principle do change. They are whatever the needs of life in a developing civilization require them to be."

*Berkeley v. Park,* 47 Misc.2d at 384, 262 N.Y. S.2d at 293 (quoting Cardozo, J. in *MacPherson v. Buick Motor Company,* 217 N.Y. 382, 391, 111 N.E. 1050, 1053 (1916). The situation is different where the cause of action is of a nature wholly unknown to common law and where, therefore, no cause of action will exist unless the statute under consideration expressly confers a private right of action. *Compare Riegel Textile Corp. v. Celanese Corp.,* 493 F.Supp. 511 (S.D.N.Y.1980), *aff'd* 649 F.2d 894 (2d Cir.1981) (no private cause of action for violations of Federal Hazardous Substances Act) *with Young v. Robertshaw Controls Co.,* 560 F.Supp. 288 (N.D.N.Y.) (recognizing private right of action for defendant's violation of rule enacted under the Consumer's Products

We conclude, therefore, that the legislative enactment imposes an obligation upon tavern owners and that the particular obligation under consideration is one which was intended partly for the safety of others. We therefore recognize the duty described in that statute as a duty imposed by statute and adopted by the common law. *Nazareno v. Urie, supra; Lopez v. Maez, supra; Berkeley v. Park, supra; Walz v. City of Hudson, supra.*

■ Borak argues that the statute should not be adopted by this court either for the purpose of recognition of duty or of setting the standard of care because it contains many provisions which have nothing to do with safety. Borak cites, for example, those portions of the statute which pertain to selling liquor before noon on Sunday or on election days. A.R.S. § 4–244(15) and (16). Borak contends that if we allow the statute to create the duty or to set the standard of care, injured parties may bring actions for damages based on such violations. We do not agree. First, we do not consider such provisions in this opinion and have not and do not hold that they create a duty for the protection of those who may be injured as a result of violation. More important, it is basic to negligence law that the courts will adopt a statutory standard only when the statute under consideration can be interpreted "to protect the class of persons in which the plaintiff is included, from the type of harm which has in fact occurred as a result of its violation." Prosser, *supra,* § 36, at 200. The legislature may regulate several aspects of an industry to achieve different goals. Thus, liquor licensees are prohibited from selling liquor before noon on Sunday and on election days, but it is obvious that these regulations are intended to protect interests other than safety.

■ We conclude, therefore, that those who furnish liquor have an obligation or "duty" to exercise care for the protection of others. This is an obligation imposed upon tavern owners for the benefit of those who may be injured by the tavern owners' patrons, whether such injury occurs on or off the premises. We find that duty both as a matter of common law and of statute. The duty is not limited to preventing violent or unruly conduct that threatens other patrons (*McFarlin v. Hall, supra*); it includes the duty to exercise due care in ceasing to furnish intoxicants to customers in order to protect members of the public who might be injured as a result of the customer's increased intoxication.

## SOCIAL HOSTS

Borak next argues that even though duty and causation may exist under the facts of a particular case, we should continue to recognize a rule of nonliability because of the fear that liability might be extended to the furnishing of liquor by social hosts. *See Coulter v. Superior Court of San Mateo,* 21 Cal.3d 114, 577 P.2d 669, 145 Cal.Rptr. 534 (1978). We are not dealing here with a social situation, but, rather, with the conduct of those licensed to dispense alcohol. We do not reach the social host-guest problem and will not speculate on the question of whether a social host may be under a lesser duty for protection of the public than a licensed seller of liquor.[4]

## LEGISLATIVE INACTION

■ Finally, Borak argues that we should continue to recognize the common

---

Safety Act, 15 U.S.C. 2051–2083, where statute permitted private cause of action for violation of such rules). *See also J.E. Hoetger and Co. v. Asencio,* 558 F.Supp. 1361 (E.D.Mich.1983), (refusing to recognize private cause of action for defendant's failure to register with the Commodity Futures Trading Commission, § 4K of the Commodity Exchange Act, because the statute was silent with respect to whether a private cause of action could be brought).

**4.** We deal here with the obligation of a licensee to help control the conduct of others who are patrons of his establishment. Such duties are recognized where a "special relationship exists between the actor and the third person." Restatement (Second) of Torts, *supra,* § 315. The existence of such a special relationship may well be predicated upon the governmental interest which permits the statutory requirement of licensing. Whether such a special relationship exists in a host-guest context is a question which we do not reach.

law rule because it is the legislative intent that tavern owners not be liable for their negligence. Acknowledging that no such legislative intent is expressed in any statute, Borak argues that the common law rule of nonliability has existed for so long in Arizona that the legislature's inaction indicates its approval of the rule. We are unable to find an expression of intent in the absence of any legislative action. We can infer from the legislature's actions that it has considerable concern regarding the damage done by drunk drivers. That inference is compelled by the legislature's enactment of A.R.S. § 4–244 and of new and stringent laws pertaining to the punishment of driving under the influence. *See* A.R.S. § 28–692.

■ Borak points out that two dram shop bills, which would have reversed the common law rule, were introduced in the legislature in recent years and were not reported out of committee. He contends that this establishes the legislature's desire that the common law rule not be changed. We are not persuaded that such an inference is proper. There are many reasons why bills are not reported out of committee. For example: the bill may be opposed by a particular committee member or by the chairperson; efforts of special interest groups and lobbyists may be successful at the committee level; or a lack of time for consideration of the bill may prevent passage by the committee.

We believe that the legislature is as cognizant as this court of the tragic toll in life and limb resulting from the combination of alcohol and gasoline. *See Ekstrom, supra; Lopez v. Maez,* 98 N.M. at 632 n. 7, 651 P.2d at 1276 n. 7. The legislature may well believe that when a judge-made common law rule has become obsolescent, anachronistic and unjust, the responsibility for change is ours, not theirs. There is no reason that we should refuse to act within our power and perform our duty when by so doing we further legislative objectives. Restatement (Second) of Torts, *supra,* § 286 comment d. The facts of this case compel the conclusion that continued existence of

the rule of tavern owner nonliability is both bad law and bad social policy. Hopefully, accountability for the results of their conduct will produce greater care on the part of all those licensed to sell liquor, and greater care will produce fewer deaths and injuries. Therefore, we agree with the words of the New Mexico Supreme Court; even in the absence of legislative action, "the time has come for this court to address this issue." *Lopez v. Maez,* 98 N.M. at 628, 651 P.2d at 1272.

■ We reach the conclusion, therefore, that we should apply to those licensed to sell liquor and their employees the same rules of liability applied to all other persons in Arizona. We are aware in doing this that tavern owners and liquor store operators, like every other special group, business, profession or occupation, see good reason why they should be favored by special doctrines which would enable them to have or retain some immunity from the rules of liability which are applicable to all others. We have previously observed that it is a sad fact that special rules of nonliability and immunity lead to the encouragement of irresponsibility and consequent harm to society. *Harris v. Buckeye Irrigation Company, supra.* This court is committed to the principle that no person and no group should be given special privileges to negligently injure others without bearing the consequences of such conduct. We do not favor special rules of tort nonliability or immunity. *Ryan v. State, supra; Fernandez v. Romo, supra; Harris v. Buckeye Irrigation Company, supra; Grimm v. Arizona Board of Pardons and Paroles, supra; Stone v. Arizona Highway Commission, supra.*

■ We acknowledge that in some situations, the public interest, constitutional considerations, or both, require special rules to protect certain businesses, professions or occupations from the ordinary theories of tort liability. Thus, those who speak and publish on matters of public interest or concern are not held liable for ordinary negligence and rules of judicial and legislative immunity and privilege or quasi-privilege are recognized. Although they do not

promote care, such exemptions from ordinary tort liability have been found necessary as a matter of public welfare. We do not find such considerations applicable to the liquor industry. If we are mistaken in this, it is possibly within the legislative power to confer upon the liquor industry some special benefit exempting it from liability. Their failure to speak on the issue so far does not convince us that they have such a desire.

We hold, therefore, that the common law doctrine of tavern owner nonliability is abolished in Arizona. Tavern owners and other licensed sellers in Arizona will be under a duty of care and may be held liable when they sell liquor to an intoxicated patron or customer under circumstances where the licensee or his employees know or should know that such conduct creates an unreasonable risk of harm to others who may be injured either on or off the premises.[5] If the duty of care is breached, the seller will be liable for the damage caused by his negligence.

The judgment below is reversed, and the case is remanded for further proceedings.

GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.

HOLOHAN, Chief Justice, specially concurring.

The issue of the duty imposed upon a tavern owner in serving intoxicants is governed by statute, and in my opinion any discussion of common law duty is irrelevant. Subject to this limitation I concur in the decision of the court.

---

5. Issue regarding retrospective application of the rule and the standard of conduct to be applied in these situations is discussed in *Brannigan v. Raybuck,* 136 Ariz. 513, 667 P.2d 213 (1983) (decided this date).